## ANDREWS et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 135.

Circuit Court of Appeals, Second Circuit.
February 3, 1930.

56

Leon R. Jillson, of New York City, for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Randolph C. Shaw, Sp. Asst. Attys. Gen. (C. M. Charest, Gen. Counsel, and E. Riley Campbell, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and MACK, Circuit Judges.

L. HAND, Circuit Judge.

The decedent, Effie Andrews, died in 1923 at Saratoga Springs, N. Y., seised in remainder in fee of a half interest in a piece of real property, 47 West Fifty-Seventh street, New York City, subject to a life estate of her brother, George D. Cochran, 74 years old. She was also possessed of $100,000 of bonds of a real estate company in New York secured by a second mortgage; these were not listed upon any exchange, and there was no market for them. Finally, she held a note for $100,000 of the First Church of Christ, Scientist, secured by another $100,000 of bonds, similar to those which she held outright. The maker had paid $40,000 upon the note before February 21, 1922, and the decedent had returned a like amount of the pledged bonds. On that day she delivered the pledged bonds to one Chamberlain, one of her executors, as a gift, and followed it shortly with a letter declaring that the loan would probably soon be paid, and that, as payments were made, the decedent would deliver them to the donee in exchange for a like par amount of funds, "unless you should prefer to keep some of them in lieu of cash." Thereafter, but before the decedent's death, the maker paid more and got back the corresponding bonds, but the decedent never delivered the note to Chamberlain, having probably forgotten its existence.

■ The Board fixed the value of the remainder in No. 48 West Fifty-Seventh street at $88,000, that being the amount at which it was sold to the other remainderman on January 13, 1925, about 14 months after the decedent's death; the value of real property in that neighborhood not having substantially risen during that period. The petitioners, by a competent appraiser of such property, proved that the value at the time of the decedent's death was about $68,000, and this was accepted by the New York taxing authorities for its transfer tax. On such a record we cannot upset the finding of the Board upon disputed proof. While we might not have reached the same result ourselves, the sale was some evidence of value which the Board may have thought more reliable than the appraisal of experts. Whatever be the New York rule in such cases, the Board was bound to follow that prevailing in equity in the District of Columbia, (U. S. Code, title 26, § 1219 (a), 26 USCA § 1219(a), under which sales are regarded as more reliable evidence than expert opinion. Ruppert v. McArdle, 42 App. D. C. 392, L. R. A. 1915C, 846, Ann. Cas. 1916B, 126. When taxpayers use the remedy of an appeal to the Board, they not only cut themselves off from local rules as to valuation, but prevent any review, so long as the finding has support in the evidence.

■ A nicer question is of the valuation of the second mortgage bonds. The petitioners called two apparently disinterested witnesses familiar with such securities, one of whom fixed their value at 66, and the other at between 35 and 50. One of the petitioners, who had some acquaintance with the bonds, put their value at 60. However improbable it may have been that they should have been worth more than the highest of these figures, again we have before us only the question whether there was any evidence to support the value of 80 fixed by the Board. This was as follows: About two years after the decedent's death, one of the petitioners made an affidavit for use in the proceeding before the Commissioner, alleging "that 80 is the highest possible value" which the petitioners "can find" for the bonds. On the cross-examination of the affiant, who testified before the Board, this was offered in evidence by the Commissioner and received without objection.

While it will be observed that it did not profess to fix the value of the bonds, but only their maximum, nevertheless, we cannot say that it could not be used as evidence of value. It was an admission by the executors, made after inquiry satisfactory to them. Though given only a maximum, it was not improper to assume that they would not set a value higher than the property could have brought. We cannot, therefore, say that it offered no basis for the conclusion.

The last question raises an issue of law on which we can find very little authority. The bonds, which the decedent held as collateral to the church's note for $100,000, she gave to Chamberlain, and, being delivered, the gift was complete as to them. But she did not deliver the note, so that the result was an attempt to separate the pledge from the debt. Had she intended to give the bonds outright, she would have converted them, and another situation would have arisen; but the letter shows that she did not mean to do this. She recognized that her interest was only that of a pledgee, and this was all she meant to transfer. The most natural construction to impose upon the transaction is that she meant to give her lien in the bonds, and for that matter the note along with it. This she had power to do, except that unhappily her intention failed of complete execution, because she forgot to deliver the note.

The books do not, so far as we have found, explain why the transfer of a pledge without the debt is abortive, perhaps because the reason is obvious. At any rate, a little reflection proves that this must be true. Thus, in the case at bar, although the donee became by hypothesis possessed of the donor's interest in the pledge, she could not use it to her advantage, whatever happened. When the note became due, the maker for his protection must pay the donor, who still held it and remained the obligee. Payment would, however, extinguish the lien, and with it the only interest of the donee, who would at once become liable for their return. Nor could she insist upon the donor's paying her the proceeds of the note, since the note had never been given her. Similarly, if the donor sought to enforce the note, she could do so; but the maker, being compelled to pay, could again insist upon the surrender of the pledge, and the donee could not resist his demand. On the other hand, though the donee foreclosed the pledge upon default, since it was made only as security, the pledgor could insist that the proceeds of the sale should extinguish the note, else he would still have it to pay, which was not according to the tenor of the contract. Thus, in no event could the donee secure any benefit from the gift, and the donor remained the only person who had any beneficial interest in either debt or pledge; the gift was a nullity.

In McHugh v. O'Connor, 91 Ala. 243, 9 So. 165, the mortgagee had given back the mortgage to the mortgagor, but had failed to include the note. In a suit quia timet by a devisee of the mortgagor against the mortgagee's executor, it was held that the gift of the mortgage was a nullity and the bill was dismissed. In Wilson v. Carpenter, 17 Wis. 512, the mortgagee had given the mortgage to the plaintiff's assignor without the note, which the mortgagor had later paid. This was held to extinguish the mortgage. It has been often held that a transfer of the security, not by gift, is ineffectual. Van Eman v. Stanchfield, 13 Minn. 75 (Gil. 70); Johnson v. Clarke (N. J. Err. & App.) 28 A. 558; Sanford v. Kane, 133 Ill. 199, 24 N. E. 414; 8 L. R. A. 724, 23 Am. St. Rep. 602; Cleveland v. Cohrs, 10 S. C. 224; Pope v. Jacobus, 10 Iowa, 262; Swan v. Yaple, 35 Iowa, 248; Edgell v. Stanford, 3 Vt. 202; Morgan v. Smith American Organ Co., 73 Ind. 179; Merritt v. Bartholick, 36 N. Y. 44; Century Holding Co. v. Ebling Brewing Co. (App. Term, Sup. Ct.) 167 N. Y. S. 52. We conclude that the gift was ineffectual, and that at the time of her death the note was collectible by the decedent for so much as remained unpaid. As this was all that the Board included in the tax, its decision was right.

Decision affirmed.