JOHN J. FLYNN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76599.    Promulgated April 30, 1937.

*Pressly R. Baldridge, Esq.,* for the petitioner.
*I. Graff, Esq.,* for the respondent.

OPINION.

HARRON: The respondent having conceded error as to the 5 percent negligence penalty of $461.04 proposed by him, the two issues remaining in this proceeding are (1) the amount of gain, if any, from the petitioner's exchange of real estate for preferred stock of the Queen City Realty Co. and (2) whether a loss on W. B. Foshay Co. stock is deductible by the petitioner in 1930, and, if so, in what amount.

*Issue (1).* The respondent alleged the petitioner received a gain of $45,000 on an exchange of petitioner's real estate for preferred stock of the Queen City Realty Co., which gain was computed by determining a basis to petitioner of $5,000 for the real estate and $50,000 as the fair market value of the 500 shares of preferred stock received in exchange. The petitioner had returned no income from the exchange in 1930. The real estate which the petitioner exchanged was composed of two parcels, one of which was acquired in 1928 at an undisputed cost of $11,500. The other parcel was acquired in 1891 and its basis is therefore its fair market value on March 1, 1913. Petitioner presented competent testimony of real estate experts that the March 1, 1913, value of this parcel was not less than $28,000. This would give the petitioner a total basis of $39,500 for his real estate. The respondent in his brief conceded $39,500 to be the correct basis for the real estate and we have accordingly so found.

The only question remaining relates to the correctness of respondent's determination of a fair market value of $50,000 for the 500 shares of preferred stock of the Queen City Realty Co. received in exchange for the real estate. This presents only an issue of fact.

The respondent's determination of the fair market value of this stock is prima facie correct and the burden is on the petitioner to present facts to overcome this presumption and to show the correct value or that the stock had no fair market value. The only evidence offered was the opinion of petitioner himself, who is a banker in Burlington, that the $50,000 par value of shares received in exchange for real estate had no market value when received. After examining the evidence, which is limited to the petitioner's testimony setting forth his own opinion, we have found as a fact that the value of the stock was $50,000 as determined by respondent.

The petitioner bases his contention that the stock he received from the Queen City Realty Co. had no fair market value in 1930 upon his own opinion, as a banker, with respect to the value. It has been held that this Board is not obligated to accept opinion evidence as to value: *Tracy* v. *Commissioner*, 53 Fed. (2d) 575; *Uncasville Manufacturing Co.* v. *Commissioner*, 55 Fed. (2d) 893. Where sales of the property to be valued have been made they are preferred as evidence of value rather than opinion. *Olson* v. *Commissioner*, 67 Fed. (2d) 726; *Andrews* v. *Commissioner*, 38 Fed. (2d) 55.

At the time the petitioner exchanged his real estate for 500 shares of the preferred stock of the Queen City Co., the company sold the preferred stock to investors to raise money to build a theatre on the realty acquired. The petitioner was interested in the enterprise and, while he did not sell the stock himself, he was acquainted with the promotion activities and has testified that about 2,250 shares of preferred stock, par value $100, were sold at par. Although his testimony on this fact is vague, he has testified without hesitation that five or six hundred shares were purchased for par value by the Paramount Motion Pictures Corporation and that he purchased, in a separate transaction, 250 shares for their par value of $25,000 cash. These purchases were made by willing buyers under no compulsion to buy who must have regarded this stock as worth its par value. We are not informed regarding the total number of shares of preferred stock that were sold but we are told that a theatre costing $315,000 was built from the proceeds of these sales. In our opinion this stock had a fair market value of $100 per share based on subscriptions at par by investors including the additional purchases by the petitioner at par.

It seems to be the theory of the petitioner that absence of actual trading in the stock and the fact that it was not accepted by banks as ready collateral for loans proves that it had no fair market value. It may well be that the subscribers to the stock preferred to hold the stock as an investment rather than offer it for sale and there is no evidence that owners were unable to sell their stock. The absence of active trading does not show necessarily lack of fair market

value. *George M. Wright,* 19 B. T. A. 541; affd., 50 Fed. (2d) 727; certiorari denied, 284 U. S. 652.

The Queen City Realty Co. had operated theatres successfully for fifteen years. Apparently it owned other property than the new theatre properties. We must assume that investors willing to purchase the preferred stock at par exercised some judgment as to the value of the newly issued stock with reference to assets which the Queen City Co. already owned and the promised earnings of the new theatre. While petitioner has failed to offer evidence as to the intrinsic value of the stock, we must take notice of the fact that realty valued by petitioner at close to $40,000 and a new theatre costing $315,000 were assets behind the preferred stock. The Queen City Realty Co. has paid the agreed 6 percent dividends on this stock from the time of issuance to the present. It also has redeemed about fifty shares at 102, although the date of redemption is not given.

Upon review of the record, we find that there is not sufficient evidence to overcome the respondent's determination that the stock in question was worth its par value of $50,000. The sales of the stock at par to buyers under no compulsion to buy supports respondent's determination which is sustained. See: *H. H. Blumenthal,* 21 B. T. A. 901; *Young & Vann Supply Co.* v. *United States,* 10 Fed. Supp. 697; *Crawford* v. *Helvering,* 70 Fed. (2d) 744; *Helvering* v. *Kendrick Coal & Dock Co.,* 72 Fed. (2d) 330; *John B. Murphy,* 8 B. T. A. 416; *Anna S. Richards,* 13 B. T. A. 1279; *James Couzens,* 11 B. T. A. 1040, 1164; *First Seattle Dexter Horton National Bank et al., Executors,* 27 B. T. A. 1242; affd., 77 Fed. (2d) 45.

*Issue 2.* The second issue is the deductibility in 1930 of $59,800 as a loss on petitioner's stock in the W. B. Foshay Co., a Delaware corporation, for which a receiver was appointed by the U. S. District Court for the District of Minnesota, and was subsequently liquidated, paying nothing to its stockholders. In his income tax return for 1930 the petitioner claimed a loss of only $49,800 on his 398 shares of preferred and 100 shares of common stock of the W. B. Foshay Co. which he listed as acquired in 1926. In the present proceeding he claims the loss to be $59,800, alleging a cost of $100 per share for the preferred and $200 per share for the common. In our opinion the petitioner is not entitled to this deduction. In the first place, he has failed to prove the cost or other basis of this stock to him and the burden is upon the taxpayer claiming a deduction to prove the amount thereof. *Burnet* v. *Houston,* 283 U. S. 233. His testimony on this point is vague and sometimes contradictory. He does not state with definiteness in what year either the preferred or common stock was acquired, but estimates that it was from 1926 through 1929. It appears that part of the preferred stock was originally obtained in

connection with the sale of the Burlington Traction Co., in which the petitioner was a majority stockholder, to the W. B. Foshay Co., a Minnesota corporation, but the petitioner was unable to say how many shares were thus received nor did he give any details of the exchange transaction to show whether it was taxable or nontaxable, or the basis to him of the property or stock exchanged. Later he exchanged the preferred stock in the Minnesota corporation for preferred stock in the W. B. Foshay Co., a Delaware corporation. Again no details of the exchange transaction are given, making it impossible for us to determine his basis. As to the common stock on which the loss is claimed, the petition alleges that its "average cost" was $200 per share. The petitioner stated at the conclusion of his testimony that he paid $200 cash for every share of the common stock. But he also stated at three different places in the record that the common stock was received in an exchange or reorganization either of the Burlington Traction Co. or of the Foshay Co. and the facts of neither exchange are in evidence. His statement that he paid cash for the stock is not supported by any evidence and is contradicted by the above statement. No canceled checks, books of account, or any corroboration whatever of this self-serving declaration were offered, although they were called for by the respondent. Indefiniteness about the year of acquisition of the common stock is significant at this point, for if purchased before April 30, 1928, it was rather the stock of the Minnesota predecessor to the Delaware corporation, since the Delaware corporation was not organized until April 30, 1928. In that case the common stock on which the loss is being claimed was necessarily received in a reorganization as was the preferred. Again, we are not given the details of the exchange necessary to determine the petitioner's proper basis. It is impossible from the conflicting statements and the paucity of facts to arrive at any basis for the petitioner's stock. A deduction for the alleged loss is therefore not allowable for failure to establish the cost or other basis of the stock to petitioner. See sections 23 (e) and 113 (a), Revenue Act of 1928; *Edward P. Haney*, 5 B. T. A. 1039; *Isabelle H. Bonbright*, 22 B. T. A. 668; *Harry Symons*, 11 B. T. A. 886; *Estate of T. J. Taylor*, 7 B. T. A. 931; *Edmond A. Hughes*, 27 B. T. A. 1022; affd., *sub nom Little* v. *Helvering*, 75 Fed. (2d) 436; *Strangman Manufacturing Co.*, 9 B. T. A. 670; *J. E. Robertson*, 13 B. T. A. 550; *Hans C. Stricker*, 12 B. T. A. 109; *Maie Kimball Mapes*, 1 B. T. A. 855; *Albert W. Finlay*, 17 B. T. A. 828.

The petitioner's claimed stock loss is unallowable for the further reason that he has failed to overcome the presumption of correctness attaching to the Commissioner's determination that the stock became worthless in 1929 rather than in 1930 when it is claimed. The chief reliance of the petitioner to overcome the Commissioner's

determination is the receiver's report which states that the books of the company showed an excess of assets over liabilities as of the date of the appointment of the receiver, November 1, 1929. That report also shows, however, that the company through highly speculative management had already borrowed up to the limit of its credit, had hypothecated most of its assets, and that a large part of its assets consisted of stock of its subsidiaries which almost immediately upon the appointment of a receiver became worthless or greatly depreciated in value. We are of the opinion that, under the circumstances, the book value of the company's assets taken alone would not be sufficient to overcome the Commissioner's determination that the stock of the company was worthless in 1929. But, however that may be, it can not overcome the presumption where, as here, it is shown that those assets experienced an immediate and precipitous decline in value resulting from the institution of the receivership. Evidence of the value of assets as of November 1, 1929, would not in any event establish the value as of December 31, 1929, and where there is uncontradicted evidence of a severe decline in values of the securities held as assets between those two dates, a showing of an actual value of the stock involved as of the end of the year would be necessary to overcome the Commissioner's determination. Since the only evidence of value of assets introduced by the petitioner was book value and no evidence at all was introduced as to value subsequent to the date of the receivership, the respondent's determination that the stock became worthless in 1929 must stand for failure of proof to the contrary. See *Mark D. Eagleton*, 35 B. T. A. 551; *Paul Pryibil*, 31 B. T. A. 164; *John Crosby Brown*, 27 B. T. A. 176; *William E. Steinback*, 30 B. T. A. 1252; *Gowen* v. *Commissioner*, 65 Fed. (2d) 923, affirming 24 B. T. A. 1028; *Sacks* v. *Commissioner*, 66 Fed. (2d) 308, affirming 25 B. T. A. 415; *R. D. Jones*, 29 B. T. A. 928; *A. C. Gwynne*, 22 B. T. A. 164; *Hans C. Stricker, supra*.

We are of the opinion that the petitioner's stock loss is not allowable in 1930 for the further reason that he is estopped from asserting his claim in that year. To allow the claimed deduction would be equivalent to double deduction. The facts are clear that while the petitioner originally claimed this loss only in his tax return for 1930 he acquiesced in the respondent's determination following a field investigation that the loss occurred in 1929 and he voluntarily accepted and retained the benefits flowing from that decision. He accepted a refund with interest of the income tax paid for the year 1929 *which was based upon allowance of the loss in that year*. His failure at any time to protest that determination and his acceptance and retention of the refund check are to our minds sufficient to constitute such an acquiescence in the respondent's decision as now

prohibits the petitioner from taking a different position. As the court said in *Hartwell Mills* v. *Rose*, 61 Fed. (2d) 441:

Especially is it true that where the government and taxpayer by acquiescence in the manner of performing an act have given a definite character ·and effect to it, the taxpayer will not be permitted after deriving benefits from this acquiescence to deny this character and effect to it, or to change its position at the government's expense.

It is immaterial under which of the conceptual classifications we place the petitioner's inability now to claim his deduction. As stated in *Stearns Co.* v. *United States*, 291 U. S. 54:

Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the· disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim on his own inequity or take advantage of his own wrong.

The revenue act contemplates that a taxpayer shall be allowed his deductions only once. *Burnet* v. *Aluminum Goods Manufacturing Co.*, 287 U. S. 544; *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62. The petitioner has obtained his deduction once and is not in our opinion entitled to it again.

*Decision will be entered under Rule 50.*