Dick H. Woods and Helen A. Woods v. Commissioner.
Woods v. Commissioner
Docket No. 71976.
United States Tax Court
T.C. Memo 1960-72; 1960 Tax Ct. Memo LEXIS 215; 19 T.C.M. (CCH) 388; T.C.M. (RIA) 60072; April 13, 1960
George E. Gibson, Esq., and John H. McEvers, Jr., Esq., for the petitioners. William A. Goffe, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $2,450.82 in the income tax of the petitioners for 1954. The only issue presented is the correctness of the respondent's disallowance of a deduction of $7,000 taken by the petitioners as a casualty loss sustained during 1954 on their personal residence. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners, Dick H. Woods and Helen A. Woods, are husband and wife and filed their joint Federal income tax return for 1954 with the director at Kansas City, Missouri. Sometimes hereinafter the term petitioner will be used to refer to petitioner Dick H. Woods. Except for war-time service between 1942 and 1946, petitioner since 1938 has been and is a practicing attorney in Kansas City, Missouri. In his practice *217 he has had occasion to advise clients respecting matters relating to the purchase and sale of real estate and since 1948 he has from time to time represented property owners in cases involving the condemnation of property. In June 1948, the petitioners purchased a residential property located at 7604 Main Street, Jackson County, Kansas City, Missouri, sometimes hereinafter referred to as the Main Street property, for an unallocated purchase price of $21,000. Subsequently in 1948 petitioners occupied the property as their residence and thereafter continued to do so until the summer of 1955. The property consisted of a lot which was 330 feet wide, fronting on Main Street, and 350 feet deep and comprised approximately 2 2/3 acres. On the lot were a 3-story frame residence, a detached garage with living quarters of 2 rooms and bath, and a tool shed. The residence contained a full basement, living room, hall, dining room, kitchen, breakfast room, 6 bedrooms and 3 baths. The foundation of the residence was of stone masonry construction, about 18 inches thick, and extended from 5 1/2 feet to 6 feet below the surface of the lot. The exterior walls of the residence were covered with wooden *218 shingles and the interior walls were of plaster construction. At the time purchased by the petitioners the residence was between 45 and 50 years of age. On at least two occasions prior to petitioners' purchase of the Main Street property, petitioner Dick Woods inspected it and in addition engaged the services of an architect to make an inspection of the foundation and construction of the residence, but did not discover until after purchasing the property that it was not within any sewer district of the city and was not connected with any sewer, but was served by a septic tank on the premises. At the time the petitioners purchased the property there were some cracks in the basement floor and in the foundation wall which had been repaired or "pointed up." From June 1948 until January 1, 1954, the petitioners expended a total of $7,500 for improvements to the above-mentioned residence. During 1952 and 1954, the petitioners paid sewer assessments totaling $4,134.82 and during 1955 they paid another sewer assessment of $4,228, all of which had been levied against the Main Street property for sewer facilities therefor. The subsoil, which underlies the lot on which the residence was *219 situated, is of a type which, during a period of drought conditions, contracts or shrinks, and decreases in volume, consequently weakening the load-bearing capability of the support of surface structures, with a possible subsidence and cracking of the foundations and other portions of the surface structures. During the summer of 1954 extreme drought conditions prevailed in the area of Kansas City, Missouri, accompanied by higher than average temperatures. On July 15, 1953, pursuant to Public Law 875, 81st Congress, the President of the United States determined that a major disaster occasioned by drought existed in the State of Missouri. On August 2, 1954, the President made a like determination as to the then existence of such a disaster. Extending over the period from about the middle of June 1954 to about the middle of October of that year, there was an extensive cracking and widening of cracks of the basement floor of the petitioners' residence, the stone masonry foundation, and the interior walls of the upper stories, and some separations of the floors and walls of the upper stories, particularly in the vicinity of the chimneys on the east and west sides of the residence. During *220 the drought conditions existing in 1953 and 1954, some other structures situated in the same section of Kansas City as petitioners' residence sustained damage similar to that sustained by petitioners' residence. The petitioners were not compensated by insurance or otherwise for the damage sustained by their residence in 1954. Considering that the probable cost of repairing the damage to their residence was not economically justifiable, the petitioners did not in 1954 or later repair the damage. Late in December 1954, petitioner employed Walter F. Page and George M. Bliss, who were engaged in the business of making appraisals of real estate in Kansas City, to appraise the damage to the residence of the petitioners in 1954. In January 1955, they appraised the damage at $7,000. In their income tax return for 1954 the petitioners deducted as a casualty loss the amount of $7,000 which was explained in the return as "Drought loss to residence per appraisal." In determining the deficiency involved herein the respondent disallowed the deduction. On August 1, 1955, the petitioners sold the Main Street property for the unallocated sum of $41,000, incurring expenses of sale in the amount *221 of $2,900. The basis of the property to the petitioners for the computation of gain was $36,862.82. The petitioners, therefore, realized a gain of $1,237.18 on the sale, none of which was recognized by reason of the petitioners having invested the entire net proceeds in a new residence. The purchaser of the Main Street property acquired it for the purpose of razing the buildings on the property, erecting several 2-story duplex apartment houses thereon, and holding them for rental purposes. Following the purchaser's acquisition of the Main Street property and during preparations for the opening of a street and the installation of a sewer at the rear end of the property, the residence was rented for a period of 6 months at a monthly rental of between $75 and $150. The residence was razed during the summer of 1956 at a cost of between $800 and $1,000. A negligible sum was received from the sale of salvaged material. Opinion The petitioners contend that the record establishes that during 1954 they sustained a casualty loss of $7,000, deductible under section 165(c)(3) of the Internal Revenue Code of 1954[1] by reason of sudden and unprecedented settlement damage *222 to their personal residence caused directly by the severe drought conditions then existing in the Kansas City, Missouri, area. The respondent takes the position that the record fails to show that the petitioners sustained any casualty loss in 1954 with respect to their residence and further that if it be assumed, without conceding, that some event occurred in 1954 that comes within the meaning of the term "casualty" as used in section 165(c)(3), the record fails to show the petitioners sustained any loss during 1954 in terms of the required change in the value of the property as a unit. *223 For purposes of discussion, we will assume, without deciding, that the damage to the residence of the petitioners was the result of a casualty. Relying on United States v. Koshland, 208 F. 2d 636, and Bessie Knapp, 23 T.C. 716, the petitioners urge that in determining the deductible amount of a casualty loss where improved real estate is involved, the land and the improvements are to be treated as distinct and separate assets and where the damage giving rise to the loss was only to the improvements, facts relating to the land are entirely immaterial. The petitioners concede that the foregoing cases involved property used in the taxpayer's trade or business and not nonbusiness residential property, as is the case here, but urge that the provisions of section 165 afford no grounds for distinguishing between the determination or computation of casualty losses sustained by nonbusiness property as compared with business property citing Alcoma Association, Inc. v. United States, 239 F. 2d 365. A question presented in the Koshland case was whether the owner of a hotel property, land and hotel building, who used the property to operate a hotel and *224 rented auxiliary store units, sustained any deductible loss for 1946 as a result of the destruction by fire in that year of the hotel building which, at the time of the fire, had an adjusted basis of $1,408, and with respect to which fire insurance proceeds of $45,000 were received. The taxpayer contended that the land and building were to be considered as a unit in determining the amount of loss for tax purposes. In determining that such treatment was not proper the court held that a casualty loss sustained on business property is measured for tax purposes by the adjusted basis of the property destroyed; that since the hotel building in question was an exhaustible asset which had been used in the business, depreciation had been allowable with respect thereto; that the amount of the depreciation so allowed or allowable was an item property to be employed to reduce the taxpayer's original cost in determining the adjusted basis of the building; that no depreciation was allowed or allowable with respect to the land and therefore its original basis remained unaffected; and that the adjusted basis of the building and the basis of the land cannot be combined into a single adjusted basis *225 for the property as a whole, for to do so would in effect be reducing the basis of the whole by depreciation allowed or allowable only as against the building, a part. The court held as inapplicable there a line of cases relied on by the taxpayer holding that where land used by the owner for residence purposes is injured by subsidence of the soil, or where ornamental trees or shrubbery growing on such land are damaged or destroyed, without physical injury to buildings upon the land, the entire estate must be considered as a unit in determining the amount of the loss for tax purposes. The Knapp case involved the determination of loss allowable for freeze damage to citrus orchards. The taxpayers there contended that both land and trees should be considered as a unit in determining the allowable loss. In holding adversely to the taxpayers, we said: "Section 23(e) of the Internal Revenue Code of 1939 is applicable to the instant case. That section provides that in computing net income there shall be allowed as deductions losses sustained during the taxable year and not compensated for by insurance or otherwise (1) if incurred in trade or business; (2) if incurred in any transaction *226 entered into for profit, though not connected with the trade or business; or (3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. "It has been held in cases involving nonbusiness property, such as residential property (where no depreciation is allowed or allowable on either land or improvements), that casualty damage to buildings and to ornamental and fruit trees is measured by considering the decrease in fair market value of the entire property (including land and improvements) as a unit. See Whipple v. United States, (D. Mass., 1928) 25 F. 2d 520; Buttram v. Jones, (W.D., Okla., 1943) 87 F. Supp. 322, and cases cited therein. It appears that in the cases cited in this paragraph there was no practical reason, for tax purposes, to consider the land and buildings or trees separately in determining the amount of the casualty loss. "In the instant case, we are dealing with business property. It is our view that buildings and orchards used in trade or business are not to be considered as integral parts of the realty for the purpose of measuring loss from casualty for tax *227 purposes. Section 23(i) of the Internal Revenue Code of 1939 provides that the basis for determining the amount of deduction under section 23(e) for losses shall be the adjusted basis provided in section 113(b) for determining the loss from a sale. Section 113(b)(1)(B) provides that the adjusted basis shall be the cost of the property adjusted to the extent of the depreciation allowed 'but not less than the amount allowable * * *.' Respondent has determined that the trees in this case are depreciable assets, and petitioners have offered no evidence to the contrary. We therefore accept respondent's determination in this respect. Thus, the basis of the trees is to be adjusted by deducting the appropriate amount of depreciation, but the land, on the other hand, is not subject to depreciation and no like adjustment is required. As a result, if we treat the land and trees as a unit, we would, in effect, adjust the basis of the entire property by the amount of depreciation allowed or allowable as to only a part of the property. United States v. Koshland, (C.A. 9, 1953) 208 F. 2d 636." As stated by the court in the Alcoma Association case, the only issue presented there was: *228 "whether under the provisions of Section 23(f) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 23 (f), the Commissioner was correct in permitting a taxpayer, appellant's transferor, to deduct only that portion of hurricane damage to his depreciable business property [citrus groves] which constituted the same percentage of his adjusted cost basis of the entire property that the loss was of the total prehurricane market value. Taxpayer contends that the entire actual loss should have been allowed, up to an amount equal to the adjusted cost basis of the entire property." The court held that the taxpayer was entitled to deduct the entire amount of the loss involved which, so far as we are able to ascertain from the opinion, was computed by treating the citrus trees and the land on which they stood as a unit and by subtracting from the fair market value of the unit before the hurricane its fair market value after the hurricane. Whatever may be the proper method for measuring a casualty loss with respect to business property, it is well settled that under section 23(e) of the 1939 Code, the pertinent provisions of which are substantially identical with the *229 applicable provisions of section 165(c)(3) of the 1954 Code, the measure of a casualty loss on nonbusiness property, the character of the property involved in the instant case, is the difference between the fair market value of the property immediately before and after the casualty, but not in excess of the adjusted basis of the property, and diminished by any insurance recovered. Helvering v. Owens, 305 U.S. 468; W. F. Harmon, 13 T.C. 373. The land and improvements are treated as a unit with no separate basis apportioned to either specifically, in determining the amount of the deductible loss. Western Products Co., 28 T.C. 1196; Harry Johnston Grant, 30 B.T.A. 1028; Buttram v. Jones, supra; Whipple v. United States, supra; cf. Leet v. Commissioner, 230 F. 2d 845. With respect to the value of the Main Street property before and after the casualty claimed by petitioners, we have the testimony of petitioner, the report made by his appraisers, the testimony of one of the appraisers, and evidence showing the sale of the property on August 1, 1955, for $41,000. The petitioners have made no showing, *230 nor do they contend, that the sale of the property was not an arm's length transaction. In the appraisal report the market value of the property is shown as $40,000 as of May 1, 1954, and $33,000 as of December 1, 1954. The difference between the two amounts, $7,000, was the amount at which they appraised the damage to the residence from settling and cracking. Although there is some language in the report indicating that the values of $40,000 and $33,000, respectively, reflected the values for all uses to which the property was adapted and for which it was capable of being used, an appraiser testified that the value included therein for the land, approximately 2 2/3 acres, reflected the value of the land for use only as a site for the residence then standing thereon, and that such value for the land was so reflected on the assumption that the property would continue, as before, to be used only for residential purposes. However, he further testified that if the house had not been on the land, the land probably would have been used for some purpose other than a single family residence because the amount of land involved was too much to be used for a single family residence. He neither *231 stated, nor was he asked to state, whether the foregoing values would be increased or decreased, and if so, by what amounts, by valuing the land for a purpose or purposes other than for its use as the site of the residence thereon. The petitioner did not give an opinion as to the fair market value of the property as a unit as of any time in 1954 or any other year. He testified in effect that in May 1954 as well as thereafter during the year, the land had a fair market value ranging from about $39,000 to about $42,000, considering that the land had been zoned for the construction of duplex apartment houses, considering that a prospective purchaser would not desire all of the land merely as the site of a residence, and assuming the opening of a street at the rear end of the property so as to double the street frontage of the property. Such a street was not opened at any time during the ownership of the property by the petitioners nor for some time after the sale of the property on August 1, 1955. The petitioner estimated the value of the residence at $30,000 as of May 1954 and at $15,000 as of the latter part of October of that year. If the totals of the values testified to by petitioner *232 for the land and the residence be considered as his opinion as to the fair market value of the property as a unit, such value was from $69,000 to $72,000 in May 1954 and from $54,000 to $57,000 as of the latter part of October of the same year. The sale of the Main Street property on August 1, 1955, was 15 months after May 1, 1954, and 8 months after December 1, 1954, the dates as of which the appraisers valued the property. The valuation dates used by petitioner in his testimony fall within the foregoing periods of 15 months and 8 months, respectively. The selling price of the property, $41,000, exceeds by $1,000 and $8,000 the values as of May 1, 1954, and December 1, 1954, respectively, placed on it by the appraisers. If the totals of the values testified to by petitioner for the land and the residence, $69,000 to $72,000 and $54,000 to $57,000, as of May 1954 and as of the latter part of October of that year, respectively, be considered as the petitioner's valuation of the property as a unit as of such dates, the property was sold on August 1, 1955, at from $28,000 to $31,000 less than its value in May 1954 and at from $13,000 to $16,000 less than its value in the latter part *233 of October 1954. We are unable to find support in the record for such decreases in the value of the property between May 1, 1954, and any subsequent date in that year as is indicated by the values testified to by petitioner. Although the petitioners' residence was damaged by settling and cracking during 1954, it does not follow that the fair market value of the property as a unit thereby was materially decreased. The purchaser of the property testified at the trial herein as a witness for the petitioners. He testified on direct examination that in paying $41,000 for the property he did not consider that any part of that amount was paid for the residence as he was interested only in obtaining the ground and contemplated razing the house in order to build duplex apartments on the ground. It is evident from this that the purchaser might well have considered the unit was of greater value as vacant land. Therefore, damage to the house may have had no effect upon the value of the unit. Where a sale of property to be valued has been made on or about a crucial date, it is regarded as more reliable evidence of value than opinion evidence. Andrews v. Commissioner, 38 F. 2d 55, *234 affirming 13 B.T.A. 651; John J. Flynn, 35 B.T.A. 1064. In our opinion the date of the sale of the Main Street property was sufficiently near the crucial dates here involved so as to constitute the sales price of the property more reliable evidence of its value on the crucial dates than the opinion evidence presented herein. It is evident too that in any event if any loss was suffered by virtue of a casualty, it was temporary in nature because the property was sold soon after the drought for an amount from $1,000 to $8,000 in excess of the fair market value thereof determined by petitioner's appraisers. Clarence A. Peterson, 30 T.C. 660, appeal dismissed nol. pros. (C.A. 9, March 21, 1960). Accordingly, we conclude that the petitioners have failed to establish that the fair market value of the property as a unit decreased by $7,000 or any other amount during 1954 and that petitioner suffered no loss from drought damage in that year. Having reached the foregoing conclusion it becomes unnecessary to determine whether the damage to the residence of petitioners was the result of a casualty within the meaning of section 165(c)(3) of the 1954 Code. *235 Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. * * *↩