CHRIS B. THEODOTOU and HELEN C. THEODOTOU, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Theodotou v. Commissioner
Docket Nos. 7488-83, 21999-83.
United States Tax Court
T.C. Memo 1985-181; 1985 Tax Ct. Memo LEXIS 451; 49 T.C.M. (CCH) 1233; T.C.M. (RIA) 85181; April 15, 1985. Ronald W. Gabriel and Charles M. Steines, for the petitioners. Nancy Herbert and Robert J. Kastl, for respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $7,829 in petitioners' Federal income taxes for 1979 (docket No. 7488-83) and deficiencies of $21,492.34 and $31,742.18 in petitioners' Federal income taxes for 1980 and 1981, respectively (docket No. 21999-83). In dispute is the value of certain gemstones donated by petitioners to the University of Richmond. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts is incorporated herein by this reference. Petitioners resided in Columbus, Ohio, at the time they filed their *452 petitions in these cases. They filed joint Federal income tax returns for the taxable years 1979, 1980, and 1981 with the Cincinnati Service Center, Covington, Kentucky. Chris B. Theodotou (petitioner) purchased a 105.66 carat kunzite on July 8, 1978, for $2,641. He purchased a 38.01 carat opal in the latter part of 1978 for $380.10. In December 1979, petitioner donated the kunzite and the opal to the University of Richmond. On their income tax return for 1979, petitioners claimed charitable contribution deductions for the donation of the kunzite and opal in the amounts of $15,849 and $2,280, respectively. Petitioner purchased a 2439.36 carat blue topaz in January 1979 for $18,934.33. He donated the topaz to the University of Richmond in 1980. On their income tax return for 1980, petitioners claimed a charitable contribution deduction of $186,852 based on contribution of the topaz. The amount of the deduction exceeding the applicable percentage limitation for 1980 was carried over to the year 1981. Petitioner Chris B. Theodotou is a physician-lawyer, and petitioners have no demonstrated experience or expertise in gemstones. In April and May 1984, in preparation for trial *453 of this case, William W. Pinch (Pinch) appraised the items in question, attributing to them the following values on the respective donation dates: Gem
Value
Kunzite
$9,509
Opal
1,900
Topaz
161,915
Pinch is a collector of mineral specimens and the owner and curator of the Pinch Mineralogical Museum, which contains approximately 16,000 mineral specimens. [1] He has been engaged in the field since 1947 and is sufficiently knowledgeable to be regarded as an expert in mineralogy. He is not, however, formally trained in gemology or appraisal techniques. From 1979 through the time of trial, Pinch was employed by Investment Rarities to buy gemstones and train employees who would be selling gemstones over the telephone. Investment Rarities sold gemstones to the public for a standard markup of 25 percent. The Pinch appraisals offered by petitioners at the time of trial were dated May 15, 1984. They were prepared by petitioners' counsel from reports prepared *454 by Pinch, using Pinch's own format, in April 1984. When the reports were retyped in the office of petitioners' counsel, language of the reports was changed. Pinch's original report, dated April 24, 1984, on the opal, stated that "this is a rare stone." As retyped in the office of petitioners' counsel and submitted to the Court by petitioners, the report dated May 15, 1984, stated that "this is a very rare stone." The April 25, 1984, report on the kunzite stated that the locality was "probably Minas Gerais, Brazil," but the May 15, 1984, report deleted the word "probably." Pinch's appraisal dated April 2, 1984, with respect to the topaz stated that the table "is not too bad" for which petitioners' counsel substituted "is fair." That report also referred to the possibility of recutting the stone for $800, but that language was deleted by counsel. Pinch signed the revised reports without knowledge of the changes that had been made, and he did not adopt those changes. On or about May 1, 1984, the items in issue were appraised by Elly Rosen (Rosen), respondent's expert. Rosen attributed the following values to the items as of the respective donation dates: Gem
Value
Kunzite
$2,377.35
Opal
577.36
Topaz
16,941.25
*455 As determined by Rosen, the most common market for sale of the kunzite would be sale to a jeweler; the most common market for sale of the opal of the topaz would be to a collector. Rosen is a gemological appraisal consultant and a Graduate Gemologist of the Gemological Institute of America. The latter title was earned by completion of proficiency examinations and a 2-year course of instruction on diamonds, colored stones, and gem identification. He is a senior member of the American Society of Appraisers, certified in gems and jewelry upon completion of an examination on appraisal ethics, appraisal theory, and gems and jewelry. He teaches courses in the appraisal of gems and jewelry, including appraisal ethics, research techniques, identification and authentication procedures, terminology, and report writing. He is a member of various other professional societies. During the years 1978 to 1980, he performed in excess of 100 appraisals encompassing approximately 1,000 items. ULTIMATE FINDING OF FACT The fair market value of the items donated to the University of Richmond was, on the respective donation dates, the cost of those items to petitioners, to wit: Gem
Value
Kunzite
$2,641.00
Opal
380.10
Topaz
18,934.33
*456 OPINION Petitioners have the burden of proving that they are entitled to the deductions that they claim. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure. There is no dispute here that donations were in fact made to a qualified donee under section 170(c). [2] To determine the allowable deduction, however, we must determine the fair market value of the donated property, to wit, "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Section 1.170A-1(c)(2), Income Tax Regs.
Although opinion evidence is obviously admissible and relevant on the question of value, we must weigh such evidence in light of the demonstrated qualifications of the expert and all other evidence of value. Anderson v. Commissioner,250 F.2d 242, 249 (5th Cir. 1957), *457 affg. a Memorandum Opinion of this Court. We are not bound by the opinion of any expert witness when that opinion is contrary to our own judgment. Barry v. United States,501 F.2d 578 (6th Cir. 1974); Kreis' Estate v. Commissioner,227 F.2d 753, 755 (6th Cir. 1955); Tripp v. Commissioner,337 F.2d 432 (7th Cir. 1964), affg. a Memorandum Opinion of this Court. We may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. Helvering v. National Grocery Co.,304 U.S. 282 (1938); Silverman v. Commissioner,538 F.2d 927, 933 (2d Cir. 1976), affg. a Memorandum Opinion of this Court. In this case we reject the testimony of Pinch because of his limited relevant experience with the items in issue, the absence of objective facts supporting his opinion, his failure to consider the cost of the items in question, the carelessness exhibited in signing reports edited by petitioners' counsel, and the inherent lack of credibility of his conclusions that the fair market values of the items in question ranged from 360 to 855 percent of the cost of the items approximately 1 year earlier. *458 Upon weighing conflicting testimony of the two experts, we believe that it is likely -- as asserted by Rosen -- that Pinch misidentified the opal as a "hyalite opal." Notwithstanding fair market value language inserted into his reports by petitioners' counsel, Pinch seemed to be applying some other, irrelevant, standard. He testified: A. I feel that they -- there are markets out there, which stones similar to these have sold in this price range. And I just happen to be of the opinion that those stones are worth that value. * * * Under these circumstances, we might merely conclude that petitioners have failed to satisfy their burden of proof. See Anselmo v. Commissioner,80 T.C. 872, 885-886 (1983). In this case, however, we have what has been described as the most reliable evidence of value, to wit, sales of the same property within a short period of time prior to the valuation date. In another context, the Court of Appeals for the Sixth Circuit, the court to which our decision in this case is appealable, has recently stated that "[i]n determining the fair market value of property, little evidence could be more probative than the direct sale of the property *459 in question." Estate of Kaplin v. Commissioner,748 F.2d 1109, 1111 (6th Cir. 1984), revg. a Memorandum Opinion of this Court. In a case involving facts similar to those before us here, but where respondent did not produce expert testimony contradicting that of petitioners, the Court of Appeals in Tripp v. Commissioner,supra, explained: The petitioner contends that inasmuch as the respondent offered no expert testimony the testimony of petitioner's expert witnesses should have been heeded and their opinions accepted by the Tax Court as determinative of the December 1955 value of the jewelry and that it was clearly erroneous for that court to reject their valuations. But the record discloses that the opinion testimony of these witnesses was almost wholly subjective in character. And, opinion evidence which does not appear to be based upon disclosed facts is of little or no value. Balaban & Katz Corp. v. Commissioner, 7 Cir., 30 F.2d 807, 808. Petitioner's witnesses failed to support their conclusions as to value with facts of convincing probative value. The Tax Court was not, under the circumstances, obliged to accept as sound the opinion *460 of the taxpayer's experts. Helvering v. National Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346; Dayton P. & L. Co. v. Public Utilities Commission, 292 U.S. 290, 299, 54 S.Ct. 647, 78 L.Ed. 1267. In the absence of any convincing reason forming a basis for the opinions expressed we are of the view that the Tax Court was fully justified in concluding that the cost of the jewelry to the petitioner in 1953 was the best evidence of its fair market value in December of 1955, the date of the gift. Cost, here, was cogent evidence of value. Cf. Guggenheim v. Rasquin, 312 U.S. 254, 258, 61 S.Ct. 507, 85 L.Ed. 813; Gessell v. Commissioner, 7 Cir., 41 F.2d 20, 22. There is no substantial evidence that any situation arose or development occurred in the interim which increased the value of the collection. * * * [Tripp v. Commissioner,337 F.2d at 434.] [3]
See also Chiu v. Commissioner, 85 T.C.     (April 15, 1985).
*461 Respondent has not requested an increased deficiency in this case. Although respondent's expert, who is well qualified in appraising the items in question, testified that the fair market values at the times of donation were less than the cost, the differences between his appraised values and the cost to petitioners were not substantial. There is no other evidence in this case that the cost paid by petitioners was not fair market value in the applicable market or otherwise was not reliable. Because appraisal techniques and opinion testimony are necessarily inexact, we conclude that the evidence of cost is the most reliable evidence in this case. Decisions will be entered for the respondent.
Footnotes
1. The parties stipulated that testimony establishing the general qualifications of the experts in Chiu v. Commissioner,↩ 85 T.C.     (     1985), would be incorporated into the record in this case.
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. In our Memorandum Opinion, we stated: Where sales of property to be valued have been made at or about a crucial date, they are preferred as evidence of value rather than opinion. Andrews v. Commissioner,38 F.2d 55 (C.A. 2, 1930), affirming 13 B.T.A. 651 (1928); John J. Flynn,35 B.T.A. 1064 (1937). [Tripp v. Commissioner,T.C. Memo. 1963-244, 22 TCM 1225↩ at 1231, 32 P-H Memo par. 63,244 at 63-1398.]