ALI A. TALEBI and SANDRA TALEBI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; CAHIT PALANTEKIN and AYTEN PALANTEKIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Talebi v. Commissioner
Docket Nos. 11095-83, 14538-83.
United States Tax Court
T.C. Memo 1985-180; 1985 Tax Ct. Memo LEXIS 450; 49 T.C.M. (CCH) 1230; T.C.M. (RIA) 85180; April 15, 1985. Ronald W. Gabriel and Charles M. Steines, for the petitioners. Nancy Herbert and Robert J. Kastl, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: In docket No. 11095-83, respondent determined a deficiency of $20,183 in the Federal income taxes of petitioners Talebi for the taxable year 1979. In docket No. 14538-83, respondent determined deficiencies of $20,258 and $11,189 in the Federal income taxes of petitioners Palantekin for the taxable years 1979 and 1980, respectively. In dispute is the value of certain *451 gemstones donated by petitioners to the Carnegie Museum of Natural History. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation is incorporated herein by this reference. Petitioners were residents of Columbus, Ohio, at the time they filed their petitions herein. They timely filed joint Federal income tax returns for the years in issue with the Cincinnati Service Center, Covington, Kentucky. On December 15, 1978, Cahit Palantekin and Ali Talebi (petitioners) purchased a kunzite stone weighing between 585 and 590 carats from Joseph M. Zaccaria of Pittsburgh, Pennsylvania, for the sum of $21,943. Each petitioner paid $10,971 for a one-half interest in the stone. The purchase price was paid in installments of $2,000 paid Docember 18, 1978; $9,000 paid on or about May 22, 1979; and $10,943 paid thereafter. Prior to December 1979, the kunzite was loaned to the Carnegie Museum of Natural History (Carnegie Museum). By letter dated December 28, 1979, the kunzite was donated by petitioners to the Carnegie Museum. On their tax returns for 1979, petitioners each claimed a charitable contribution deduction in the amount of $46,812 for donation of the kunzite *452 to the Carnegie Museum. On December 26, 1979, petitioner Palantekin purchased a 190.70 carat blue topaz stone from Charles L. Key of Sarasota, Florida, for the sum of $5,677.60. On August 8, 1980, the topaz was delivered to the Carnegie Museum. By letter dated December 29, 1980, petitioner Palantekin donated the topaz to the Carnegie Museum. On their joint Federal income tax return for 1980, petitioners Palantekin claimed a deduction in the amount of $26,698 for the donation of the topaz to the Carnegie Museum. Respondent determined that the allowable deductions for the donations made by petitioners to the Carnegie Museum were limited to the cost of the items donated. Petitioners are by occupation physicians and have no demonstrated experience in dealing in gemstones. In May 1984, William W. Pinch (Pinch) appraised the kunzite and the topaz. He appraised the kunzite at a value of $49,700 and the topaz at a value of $15,200 on the respective donation dates. Pinch is a collector of mineral specimens and the owner and curator of the Pinch Mineralogical Museum, which contains approximately 16,000 mineral specimens. [1] He has been engaged in the field since 1947 and is sufficiently *453 knowledgeable to be regarded as an expert in mineralogy. He is not, however, formally trained in gemology or appraisal techniques. From 1979 to the time of trial, Pinch was employed by Investment Rarities to buy gemstones and train employees who would be selling gemstones over the telephone. Investment Rarities sold gemstones to the public for a standard markup of 25 percent. The language on Pinch's appraisal reports defining fair market value was drafted by petitioners' counsel, and the reports were prepared in the office of petitioners' counsel. Pinch's examination of the specimens appraised by him was done very rapidly at the Carnegie Museum because the Museum would not ship the stones to him. He did not confirm the actual weights of the items. In April 1984, Elly Rosen (Rosen), respondent's expert, appraised the kunzite at a value of $18,408 and the topaz at a value of $2,212.12 as of the respective dates of donation. Rosen is a gemological appraisal consultant *454 and a Graduate Gemologist of the Gemological Institute of America. The latter title was earned by completion of proficiency examinations and a 2-year course of instruction on diamonds, colored stones, and gem identification. He is a senior member of the American Society of Appraisers, Certified in gems and jewelry upon completion of an examination on appraisal ethics, appraisal theory, and gems and jewelry. He teaches courses in the appraisal of gems and jewelry, including appraisal ethics, research techniques, identification and authentication procedures, terminology, and report writing. He is a member of various other professional societies. During the years 1978 to 1980, he performed in excess of 100 appraisals encompassing approximately 1,000 items. Rosen had extensive experience specifically in appraising kunzites and topaz. He carefully examined the items he was appraising, using recognized standards of grading and description. The value of topaz depends in substantial part on the color of the stone. Rosen's color discrimination was tested and found to be superior in May 1984. Pinch did not dispute Rosen's physical description of the items appraised. Pinch had not had *455 his color vision tested for several years. The markets used by Rosen in making his appraisal, i.e., the collector market for the kunzite and the manufacturing retail jewelry store market for the topaz, were the most common markets for sale of the items in issue. While Pinch identified alternative likely ultimate consumers of the items valued, his opinion as to the value did not vary based on the potential consumer. ULTIMATE FINDING OF FACT The fair market value of the items donated to the Carnegie Museum of Natural History was, on the respective donation dates, the cost of those items to petitioners, to wit, § 21,943 for the kunzite and $5,677.60 for the topaz. OPINION Petitioners have the burden of proving that they are entitled to the deductions that they claim. Welch v. Helvering,290 U.S. 111 (1933); New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Rule 142(a), Tax Court Rules of Practice and Procedure. There is no dispute here that donations were in fact made to a qualified donee under section 170(c). [2] To determine the allowable deduction, however, we must determine the fair market value of the donated property, to wit, *456 "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Section 1.170A-1(c)(2), Income Tax Regs.
Although opinion evidence is obviously admissible and relevant on the question of value, we must weight such evidence in light of the demonstrated qualifications of the expert and all other evidence of value. Anderson v. Commissioner,250 F.2d 242, 249 (5th Cir. 1957), affg. a Memorandum Opinion of this Court. We are not bound by the opinion of any expert witness when that opinion is contrary to our own judgment. Barry v. United States,501 F.2d 578 (6th Cir. 1974); Kreis' Estate v. Commissioner,227 F.2d 753, 755 (6th Cir. 1955); Tripp v. Commissioner,337 F.2d 432 (7th Cir. 1964), affg. a Memorandum Opinion of this Court. We may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. *457 Helvering v. National Grocery Co.,304 U.S. 282 (1938); Silverman v. Commissioner,538 F.2d 927, 933 (2d Cir. 1976), affg. a Memorandum Opinion of this Court. In this case we reject the testimony of Pinch because of his limited relevant experience with the items in issue, the absence of objective facts supporting his opinion, his failure to consider the cost of the items in question, and the inherent lack of credibility of his conclusions that the fair market values of the items in question on the respective donation dates were 226 percent of the cost of the kunzite and 268 percent of the cost of the topaz to petitioners approximately 1 year earlier. Notwithstanding fair market value language inserted into his reports by petitioners' counsel, Pinch's testimony seemed to be applying another standard. He merely agreed with petitioner's counsel that the prices that he testified to were not uncommon. Under these circumstances, we might merely conclude that petitioners have failed to satisfy their burden of proof. See Anselmo v. Commissioner,80 T.C. 872, 885-886 (1983). In this case, however, we have what has been described as *458 the most reliable evidence of value, to wit, sales of the same property within a short period of time prior to the valuation date. In another context, the Court of Appeals for the Sixth Circuit, the court to which this case is appealable, has recently stated that "[i]n determining the fair market value of property, little evidence could be more probative than the direct sale of the property in question." Estate of Kaplin v. Commissioner,748 F.2d 1109, 1111 (6th Cir. 1984), revg. a Memorandum Opinion of this Court. In a case involving facts similar to those before us here, but where respondent did not produce expert testimony contradicting that of petitioners, the Court of Appeals in Tripp v. Commissioner,supra, explained: The petitioner contends that inasmuch as the respondent offered no expert testimony the testimony of petitioner's expert witnesses should have been heeded and their opinions accepted by the Tax Court as determinative of the December 1955 value of the jewelry and that it was clearly erroneous for that court to reject their valuations. But the record discloses that the opinion testimony of these witnesses was almost wholly subjective *459 in character. And, opinion evidence which does not appear to be based upon disclosed facts is of little or no value. Balaban & Katz Corp. v. Commissioner, 7 Cir., 30 F.2d 807, 808. Petitioner's witnesses failed to support their conclusions as to value with facts of convincing probative value. The Tax Court was not, under the circumstances, obliged to accept as sound the opinion of the taxpayer's experts. Helvering v. National Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346; Dayton P. & Co. v. Public Utilities Commission, 292 U.S. 290, 299, 54 S.Ct. 647, 78 L.Ed. 1267. In the absence of any convincing reason forming a basis for the opinions expressed we are of the view that the Tax Court was fully justified in concluding that the cost of the jewelry to the petitioner in 1953 was the best evidence of its fair market value in December of 1955, the date of the gift. Cost, here, was cogent evidence of value. Cf. Guggenheim v. Rasquin, 312 U.S. 254, 258, 61 S.Ct. 507, 85 L.Ed. 813; Gessell v. Commissioner, 7 Cir., 41 F.2d 20, 22. There is no substantial evidence that any situation arose or development occurred *460 in the interim which increased the value of the collection. [Tripp v. Commissioner,337 F.2d at 434-435.] [3]
See also Chiu v. Commissioner, 85 T.C.     (April 15, 1985).
Respondent has not requested an increased deficiency in this case. Respondent's expert, who is well qualified in appraising the items in question, testified that the fair market values at the times of donation were less than the cost of the items. There is no other evidence in this case, however, that the cost paid by petitioners was not fair market value in the applicable market or otherwise was not reliable. Because appraisal techniques and opinion testimony are necessarily inexact, we conclude that cost *461 is the most reliable evidence in this case. Decisions will be entered for the respondent.
Footnotes
1. The parties stipulated that testimony establishing the general qualifications of the experts in Chiu v. Commissioner,↩ 85 T.C.     (April 15, 1985), would be incorporated into the record in this case.
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. In our Memorandum Opinion, we stated: Where sales of property to be valued have been made at or about a crucial date, they are preferred as evidence of value rather than opinion. Andrews v. Commissioner,38 F.2d 55 (C.A. 2, 1930), affirming 13 B.T.A. 651 (1928); John J. Flynn,35 B.T.A. 1064 (1937). [Tripp v. Commissioner,T.C. Memo. 1963-244, 22 TCM 1225↩ at 1231, 32 P-H Memo par. 63,244 at 63-1398.]