## BALABAN & KATZ CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### TIVOLI THEATRE CO. v. SAME.

Circuit Court of Appeals, Seventh Circuit.
February 21, 1929.

Nos. 4038, 4039.

David Levinson, of Chicago, Ill., for petitioners.

H. R. Gamble, of Washington, D. C., for respondent.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. Petitioner's complaint is that the Board of Tax Appeals should have allowed it 4 per cent., instead of 3 per cent., for depreciation and obsolescence on its motion picture theater, the "Chicago," located in the city of Chicago.

The "obsolescence" under consideration in rate making and for other purposes usually has to do with machinery, or other units used in the construction and operation of properties, because there is a gradual wearing out of such units, so that they finally cannot be used economically or at all. The "obsolescence" claimed by petitioner is not in machinery or other units used in theater construction and operation, but the claim is that, because of improvements in moving picture theater construction, which have been or will be incorporated in new theaters, and which cannot be put into the "Chicago," that theater, as a unit, is progressing in obsolescence to a point where, after 15 or 20 years, it cannot be profitably operated.

The "obsolescence" that petitioner has undertaken to establish by both fact and opinion evidence arises, if at all, from the fact that there have been improvements in ventilating methods, in the positioning of the booths from which the pictures are thrown upon the screen, and various other things that cannot be used in the "Chicago" theater. Many of those things, testified to by Mr. Balaban, an officer of petitioner, as producing obsolescence, have not been put into use anywhere, and in fact have not been so perfected that it is known what the consequences of their perfection and use, if they are ever brought into use, will be upon any theater. The only reason given by Mr. Balaban why the "Chicago" theater was not playing to capacity houses was that the added seating capacity in Chicago during the then past year had affected the "Chicago." There is no testimony in the record that the box-office receipts of the theater in question have been affected by the absence of the improvements from that theater, or otherwise.

One witness, an architect, asked to estimate the useful economic life of the theater, said: "It is very difficult to estimate exactly or to even come close. * * * I have not made any study of the operation of moving pictures from the business or attendance point of view." A structural engineer based his opinion that the useful economic life of the theater was between 15 and 20 years on the fact that two small theaters in outlying districts had, after about 7 years, been converted into garages, and on the further fact that he had often been called in to look over theaters built 10 years ago to determine whether they could be improved. The witness Schultz, without stating any facts, and apparently without having anything more than a general knowledge of the "Chicago" theater, said that the economic life of the theater was considerably shorter than that

of a modern loop office building in Chicago, being about 16 years, with a maximum of 20. The only other witness was·a member of a Chicago investment house, and testified that: "The type of theater to which the Chicago, Tivoli and Uptown belong is the latest development, so far as we know. * * * We have no means of judging what future conditions will bring about in the result of diminished returns in that type of property." This testimony indicates clearly that he had no facts upon which to estimate the economic life of any theater, to say nothing about the theater in question.

It thus appears that petitioner's factual evidence did not establish before the Board any loss in the earning power of the theater. In the Eckstein Case (2 B. T. A. 19), relied upon by petitioner, there was a showing of a loss of rentals of from 25 per cent. to 50 per cent. Opinion evidence, to be of any value, should be based either upon admitted facts or upon facts, within the knowledge of the witness, disclosed in the record. Opinion evidence that does not appear to be based upon disclosed facts is of little or no value. The opinion witnesses here were almost wholly without facts to support their conclusions, and it was within the province of the Board to disregard the opinion evidence and base its opinion upon the facts in the record before it. The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937; Idaho Power Co. v. Thompson (D. C.) 19 F.(2d) 547. We find nothing in Chicago Ry. Co. v. Blair (C. C. A.) 20 F.(2d) 10 (14), conflicting with this conclusion.

The order is affirmed.

No. 4039. Tivoli Theatre Company, Petitioner, v. Commissioner of Internal Revenue, Respondent. This case was, under stipulation, heard upon the same record as No. 4038, supra, and the order therein is affirmed.