Chester D. TRIPP, Chester D. Tripp, surviving spouse etc., Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14560.

United States Court of Appeals
Seventh Circuit.

Oct. 23, 1964.

William P. Sutter, Chicago, Ill., Samuel H. Horne, Washington, D. C., Charles W. Davis, Chicago, Ill., Hopkins, Sutter, Owen, Mulroy, Wentz & Davis, Chicago, Ill., of counsel, for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Melva M. Graney, Attorney, Tax Division, U. S. Department of Justice, Washington, D. C., Lee A. Jackson, Harry Baum, Benjamin M. Parker, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

These petitions for review of Tax Court decisions concern income tax deficiencies determined against petitioner as the result of disallowance of deductions claimed for the taxable years 1955 and 1956 as charitable donations.

The taxpayer in his income tax return for 1955, filed jointly as surviving spouse and executor of his wife's estate, took a charitable deduction in the amount of $42,500 by reason of a gift of five pieces of ancient Hellenistic-Syrian jewelry to the Oriental Institute of the University of Chicago, and a deduction in the amount of $531.00 as a contribution to Luther College, Decorah, Iowa. In his 1956 return taxpayer took a deduction of $550.00 as representing a similar contribution to the college. The Commissioner of Internal Revenue determined that the value of the jewelry was $15,000 and disallowed any deduction on account of the gift thereof in excess of that amount. The Commissioner disallowed the deductions claimed as contributions to the college on the basis that they were made for the benefit of a named individual and did not qualify for deductions as charitable contributions. The Tax Court sustained the Commissioner's determinations.

The matter was heard in the Tax Court on a stipulation as to certain facts,[1] exhibits, and upon a deposition on written interrogatories and oral testimony introduced on behalf of the petitioner. The court filed an opinion containing its findings of fact and conclusions therefrom.

The record discloses that petitioner purchased the jewelry[2] in April of 1953 from Fouad Alouf, a dealer in archeological antiques, at Beirut, Lebanon, pursuant to arrangements made by Dr. Carl H. Kraeling, the director of Oriental Institute. The purchase price was $15,000. The collection was placed on exhibition at the Institute, and designated as "on loan" from petitioner. In December of 1955 the petitioner made a gift of the collection to the Institute. During the period it was on loan it was insured for a value of $15,000.

In support of a fair market value of $50,000 (or at least in the amount of $42,500, the deduction claimed) for the jewelry at the time of its gift to Oriental Institute petitioner relies upon the valuation testimony of Alouf, Dr. Kraeling, and Fahim Kouchakji, a New York art dealer and collector of art objects including Hellenistic-Syrian antiquities, whom he presented as expert witnesses.

Alouf, in answer to deposition interrogatories, expressed the opinion the collection is and always has been worth $100,000. He confirmed a 1955 valuation of $50,000 he had placed on the collection in a May 16, 1955 letter to the petitioner by stating that in 1955 people did not have money for such items. He further stated that in December of 1955 the market was not good and "no objects like these were sold" at or about that time. He explained his sale of the collection in 1953 for $15,000 on the basis that he was in need of money at the time, but in earlier correspondence relating to and preceding the sale he had informed Kraeling that the decision to sell for this

---

1. Among other things, the tax-exempt status of the Oriental Institute and of Luther College was stipulated.

2. The collection of jewelry involved consists of five pieces: two matching gold arm-bands in the form of serpents; one gold filigree bracelet with inlaid stones; one gold finger ring with carved stone of male profile; and one gold finger ring with carved stone of two profiles.

amount (he had been offering the collection for sale in 1952 for $26,000, and in 1953 for $25,000) was made "just to encourage you" and "pave the way for other acquisitions in the future." Dr. Kraeling testified that in his opinion the fair market value of the jewelry in 1955—valuing the collection as a related group—was between $42,000 and $50,000; "about $47,000". He had advised petitioner in February of 1953 that he thought the jewelry could be purchased for $18,000 and referred to another expert as feeling "the objects would not be over-priced at $18,000". He characterized the $15,000 purchase as "a bargain". Kouchakji's opinion was "they were worth between $40,000 and $50,000 from 1953 or '55, or '58, or '63; make no difference". Such amount was "a fair price for them".

The Tax Court concluded on the basis of its examination and appraisal of the evidence "including the reasons stated by the witnesses for the valuations as of December 1955 testified to by them" that it was unable to find that the jewelry had any greater value in December 1955 than the $15,000 petitioner had paid for it in April of 1953. It pointed to Kouchakji's testimony as negating the occurrence of any situation or development which resulted in an increase in value during the period between the purchase of the jewelry and its gift to the Institute.

■■ The fair market value of property on a particular date for tax purposes is peculiarly a question of fact and a finding thereof by the Tax Court is a finding of fact (Fox River Paper Corp. v. United States, 7 Cir., 165 F.2d 639, 640; Hamm v. Commissioner, 8 Cir., 325 F.2d 934) which, it is well settled, must stand unless it is clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Interstate Drop Forge Co. v. Commissioner, 7 Cir., 326 F.2d 743; Mensik v. Commissioner, 7 Cir., 328 F.2d 147, 150. And this Court in determining whether there is substantial evidence to support a finding of fact by the Tax Court must view the evidence in the entire record in the light which is most favorable to the finding. Huckins Tool & Die, Inc. v. Commissioner, 7 Cir., 289 F.2d 549, 552.

■ The petitioner contends that inasmuch as the respondent offered no expert testimony the testimony of petitioner's expert witnesses should have been heeded and their opinions accepted by the Tax Court as determinative of the December 1955 value of the jewelry and that it was clearly erroneous for that court to reject their valuations. But the record discloses that the opinion testimony of these witnesses was almost wholly subjective in character. And, opinion evidence which does not appear to be based upon disclosed facts is of little or no value. Balaban & Katz Corp. v. Commissioner, 7 Cir., 30 F.2d 807, 808. Petitioner's witnesses failed to support their conclusions as to value with facts of convincing probative value. The Tax Court was not, under the circumstances, obliged to accept as sound the opinion of the taxpayer's experts. Helvering v. National Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346; Dayton P. & L. Co. v. Public Utilities Commission, 292 U.S. 290, 299, 54 S.Ct. 647, 78 L.Ed. 1267. In the absence of any convincing reason forming a basis for the opinions expressed we are of the view that the Tax Court was fully justified in concluding that the cost of the jewelry to the petitioner in 1953 was the best evidence of its fair market value in December of 1955, the date of the gift. Cost, here, was cogent evidence of value. Cf. Guggenheim v. Rasquin, 312 U.S. 254, 258, 61 S.Ct. 507, 85 L.Ed. 813; Gessell v. Commissioner, 7 Cir., 41 F.2d 20, 22. There is no substantial evidence that any situation arose or development occurred in the interim which increased the value of the collection. Of the three witnesses only Dr. Kraeling appears to attach any significance as to the identity of the person whose portrait appears on the ring bearing the carved male profile. At the time of the 1953 purchase, he and some others had assumed it was that of Marcus Agrippa. Subsequent to the purchase further study led him to believe the pro-

file to be that of Marc Antony.[3] But there is nothing in the record as to why this factor of itself should have any appreciable effect on the value of the ring, or of the collection of which it is a part. He did concede that his valuation "is artificial, it's analytical; it may be called suppositious. I do not know how these figures are categorized".

In view of the unsatisfactory nature of the expert opinion testimony and its lack of a realistic basis in fact we see no ground for upsetting the fair market value finding of the Tax Court as clearly erroneous. It is based on facts definitely established—the price a collector of such objects paid a dealer-expert on the advice of another expert who was anxious that the purchaser make the acquisition; and the valuation used for insurance purposes during the pre-gift period.

We turn to consideration of the payments made by petitioner to Luther College. The Tax Court sustained the Commissioner's determination that these payments ($531.00 in 1955, and $550.00 in 1956) in fact represented donations for the benefit of a named individual, Robert Roble, and held that they did not qualify for deductions as charitable contributions. The evidence on this issue consists of the testimony of the petitioner and correspondence relating to the payments. The record discloses that petitioner indicated to Roble, a young man who was interested in attending Luther College and studying for the ministry, that he would aid him financially and "if [petitioner] could arrange a scholarship that he could qualify for and obtain, [petitioner would] be very glad to do so". Petitioner, who theretofore had had no contact with Luther College, wrote its director of admissions on August 23, 1954, as follows:

"I am interested in the work that your College is doing and I am enclosing my check for $225.00, which as I understand it, represents tuition for one term, plus book requirements.

"Of late, I have been interested in the career of Mr. Robert F. Roble, who is a very promising young man in my opinion, and whose family lives close to my Summer Home. I believe he deserves all the help he can get toward his education.

"I am aware that a donation to a Scholarship Fund is only deductible if it is unspecified, however, if in your opinion and that of the authorities, it could be applied to the advantage of Mr. Robert F. Roble, I think it would be constructive."

The college acknowledged receipt of the check and that it had been placed in the Student Account to the credit of Roble. The two payments thereafter made in 1955 and the payments made in 1956 to the college were

3. A motion to remand the cause to the Tax Court in order that it might pass upon a motion for a new trial based upon newly discovered evidence was taken with the case. The motion is denied. The motion is based on a representation that Miss H. M. L. Vollenweider of the Museum of Art and History, Geneva, Switzerland, has written two works, as yet unpublished, which discuss the portrait ring and identify the profile as Marc Antony's; and that a work on Ancient Seals, to be published soon by a London, England, firm, will picture the ring and discuss its importance. Apart from the question as to whether such a motion is properly to be presented to this Court, or the procedure outlined in Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 7 Cir., 281 F.2d 252, 260–261, where Rule 60(b) of the Federal Rules of Civil Procedure (28 U.S.C.A.) was involved, should have been followed, we agree with the respondent that evidence of the content of these future publications could have no bearing on the issue here involved—the fair cash market value of the jewelry in December 1955—a time long since past. Moreover, the subject matter of the anticipated publications demonstrates that such evidence would be merely corroborative in nature—reflecting the agreement of Miss Vollenweider, a person with whom Dr. Kraeling discussed the collection after its purchase in 1953 but before its gift to the Institute, with Dr. Kraeling's earlier opinion that the profile portrayed on the ring is that of Marc Antony.

characterized in the letters of transmittal as "scholarship grant[s] for Robert Frederick Roble" or as covering statements rendered in the name of Roble. It is clear from the record that the petitioner intended to aid Roble in securing an education and that the payments to the college were earmarked for that purpose. The record bears out the Tax Court's finding of a lack of anything in the record to indicate that the college ever at any time awarded Roble a scholarship or took any other action obligating it to provide him with tuition, book requirements, or miscellaneous requirements out of its scholarship funds, or any of its other funds. If a "scholarship" was involved it was one the petitioner, not the college, awarded Roble. The Tax Court's finding that the payments made in 1955 and 1956 were for the sole benefit of one specified person, Robert Roble, rather than gifts to the college for the benefit of an indefinite number of persons, is amply supported by the record. The payments made were not to a general scholarship fund to be used as the college saw fit but were to be applied to the educational expenses of Roble as covered in the statements rendered.

Petitioner concedes that a contribution to an individual, no matter how worthy, does not qualify as a charitable deduction. We see no purpose in extending this opinion by discussion of or reference to the cases cited by the parties.

The decisions of the Tax Court are affirmed.

Affirmed.

KNOCH, Circuit Judge.

I concur in part. I agree that the record supports the finding that the payments to Luther College were not made to a general scholarship fund to be used as the college saw fit, but were clearly earmarked for use only in defraying the educational expenses of a particular student.

However, with respect to the gift of the jewelry to the Oriental Institute, I feel that the Tax Court was in error. If one disregards the opinions of the experts, (and it is difficult to see how one can produce any other type of evidence for such unique items as those here involved) then there was absolutely no evidence of the fair market value of the jewelry in Chicago at the time of the gift.

It seems unrealistic to me to conclude that the items did not appreciate in value to a considerable degree from the mere fact that they were in Chicago, had been displayed in a reputable museum, and were in effect authenticated by experts over a period of two years. It seems unnecessary for the experts to testify that the value of a portrait ring is increased by identification of its subject first as one fairly well known, and then, later, as one much better known, to students of history. The fact seems to me to speak for itself.

At the time of the purchase Dr. Kraeling thought that the portrait was that of Marcus Agrippa. When he wrote to the taxpayer on February 6, 1953, [Appendix p. 147] from Lebanon, during the negotiations to buy the collection from Mr. Alouf, Dr. Kraeling stated that Mr. Alouf did not know the head to be that of Marcus Agrippa. Even then he expressed the opinion that the very same collection, in the hands of a European dealer, who could judge the historic and artistic value of the gem with the portrait head, "would go way up in price just because of that one item." Under those conditions, i. e. in Europe, rather than in Lebanon, even in 1953, he suggested a valuation of $35,000 as not excessive.

At the Tax Court hearing, Dr. Kraeling testified that the portrait was later found to be that of Marc Antony dating from about 39 B.C. Mr. Kouchakji testified that only about fifteen signed gems were known. Dr. Kraeling testified that the only comparable collection of which he was aware was an Achaemenian collection which the Oriental Institute purchased in 1948 for $54,000. [Appendix pp. 78, 94]

If the Tax Court disregarded Dr. Kraeling's testimony because his identification of the portrait was not credited,

then the newly discovered corroboratory evidence, sought to be presented to the Tax Court on remand, was indeed relevant.

In addition, I find nothing inconsistent with the original seller's statement made in the course of bargaining, that he was selling the items below his own estimate of their worth in order to secure more sales in the future, and his later statement that he made the sale at that price because he was in need of money. I would reverse with respect to the deduction for the gift to the Oriental Institute.