Cliff May and Jean May v. Commissioner.
May v. Commissioner
Docket No. 1321-63.
United States Tax Court
T.C. Memo 1965-38; 1965 Tax Ct. Memo LEXIS 292; 24 T.C.M. (CCH) 205; T.C.M. (RIA) 65038; February 25, 1965
*292 Fair market value in 1958 and 1959 of 51 architectural illustrations donated to the University of Southern California determined. Leon B. Brown, 458 S. Spring St., Los Angeles, Calif., for the petitioners. Edward M. Fox, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax for the taxable years 1958 and 1959 in the respective amounts of $1,026.49 and $2,698.03. The sole issue for decision is the fair market value in 1958 and in 1959 of 51 architectural illustrations which were donated to the University of Southern California in those years for which the petitioners claimed charitable deductions. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioners *293 are husband and wife, residents of Los Angeles, California. They filed joint income tax returns for the taxable years 1958 and 1959 with the district director of internal revenue, Los Angeles, California. Hereinafter Cliff May will be referred to as the petitioner. The petitioner designs and builds ranch style homes. He is, however, not an architect. In the operation of his business he often engages, prior to construction, architects or illustrators to prepare architectural illustrations of a home or building he has designed. [1]
*294 Many of the petitioner's illustrations were prepared by Chris Choate, an architect, illustrator, and teacher. Choate is a graduate of the University of Southern California School of Architecture, and studied painting and sculpture at the Chouinard School of Art. He has successively been engaged as chief designer for the Rural Resettlement Administration, as a set designer and illustrator in the motion picture industry, and as a teacher in the art department of the University of California at Los Angeles, teaching 2 courses in architectural illustration. In 1961 he published a book entitled "Architectural Presentation in Opaque Water Color". He has also been engaged in practice as an architect in his individual capacity. Commencing in 1945 he began preparing architectural illustrations for architects and designers, and has prepared between 700 and 1,000 such illustrations, of which approximately 100 were prepared for the petitioner between 1945 and 1955. The fee which Choate charged petitioner was $85 for a small illustration and $150 for a large illustration, which amounts were deducted by petitioner as business expenses in the years paid. These illustrations were generally prepared *295 in water color and were framed and glazed. It took Choate approximately 1/2 day to prepare a small illustration and a full day to prepare a large illustration. Choate charged architects, other than the petitioner, 35" per square inch. His present fee is a minimum of 50" per square inch. The illustrations prepared by Choate for petitioner differed from those prepared for other customers in that the view was often from a position above eye level and also showed a small floor plan of the house or building depicted. In late 1958 petitioner donated to the University of Southern California a total of 26 architectural illustrations, consisting of 1 small size and 24 large size illustrations prepared in water color by Choate, and 1 medium size illustration by Choate prepared in pen and ink. In late 1959 petitioner donated to the same university a total of 25 architectural illustrations. At least 8 of these were prepared in cryon, pencil, or charcoal, at least 6 of the 25 were of the smaller size, at least 7 were unsigned, and at least 3 were prepared by persons other than Choate. At the time of the hearing in this case, 20 of the 51 architectural illustrations donated in the years 1958 *296 and 1959 had been misplaced or lost by the university. The remaining 31 were kept in a storeroom at the university library, some of them had been damaged, and at least 12 were not in frames. In 1958, prior to making his donation of the architectural illustrations, petitioner caused the illustrations to be appraised by Alfred Stendahl, who since 1939 has been an art dealer in California. On November 15, 1958, Stendahl submitted to petitioner a written appraisal of the 26 illustrations in which he stated "This collection of sketches and water color renderings should be valued at $7,800.00 or $300.00 each." Prior to making his appraisal for the petitioner, Stendahl had never appraised any other architectural illustrations, nor has he appraised any since that time. He has never purchased or sold any such illustrations. In making his appraisal he viewed 6 or 8 of the illustrations but viewed color transparencies of the remaining 18 or 20. No appraisal was made of the 25 illustrations donated by the petitioner to the university in 1959. In 1963 after petitioner's books had been audited by an agent of the Internal Revenue Service, he sold 2 large illustrations for $450 each. One such *297 illustration was sold to a construction company, and the other to the owner of the house that the illustration depicted. Both of these were prepared by Choate and were done in water color. About 2 weeks prior to the trial of this case, petitioner sold a small Choate architectural rendering for $350. In their 1958 and 1959 income tax returns, the petitioners claimed charitable deductions on account of the illustrations which they had donated to the university in the respective amounts of $7,800 and $7,500. Respondent disallowed $7,410 and $7,125, respectively, of the amounts claimed with the explanation that the petitioners had failed to establish that the fair market value of the illustrations donated exceeded the respective aggregate amounts of $390 and $375 at the dates donated. The 26 illustrations donated by the petitioner to the university in 1958 had an aggregate fair market value at the time donated of $4,000. The 25 illustrations donated by the petitioner to the university in 1959 had an aggregate fair market value at the time donated of $2,500. Opinion The respondent contends that the architectural illustrations which the petitioner donated to the university in 1958 *298 and 1959 had an average fair market value not in excess of $15 each, which is the average allowed by him in the notice of deficiency. The petitioner claimed charitable deductions, under section 170 of the Internal Revenue Code of 1954, [2] on the basis of an average fair market value of $300 for each of the illustrations. On brief the petitioner continues to claim that the fair market value of the illustrations donated in 1958 was $300 each, or an aggregate of $7,800, but claims an aggregate fair market value of $5,845 for those donated in 1959, instead of the aggregate amount of $7,500 claimed in his return. *299 The issue as to the fair market value of property is, of course, a question of fact to be determined from all the evidence. Tripp v. Commissioner, (C.A. 7) 337 F. 2d 432, Hamm v. Commissioner, (C.A. 8) 325 F. 2d 934; Estate of Grace N. Williams v. Commissioner, (C.A. 9) 256 F. 2d 217; Penn v. Commissioner, (C.A. 9) 219 F. 2d 18; and Hamburger v. Commissioner, (C.A. 9) 166 F. 2d 422, 425, all affirming Memorandum Opinion of this Court. The art dealer, Alfred Stendahl, who in 1958 appraised the 26 architectural illustrations donated in that year, testified that his appraisal was based upon the assumption that all the illustrations were large size water colors which in his opinion would range in value $275from to $325, or an average of $300. He conceded that there was no established market for architectural illustrations, that he had never bought or sold any, and that he had never theretofore appraised any. He stated that he believed that he could create a market for architectural illustrations to be used as office decorations of businesses having relation to construction of houses, such as construction companies, lending *300 institutions, and title insurance companies, but indicated that he did not believe he could create a market among the general public. He stated that his valuation was based upon his experience in regard to sales of other types of water colors depicting homes and scenery. He further testified that his opinion was not influenced by the particular artist or whether the illustration was or was not signed by the artist. At the trial the respondent produced 7 of the illustrations which had been donated in 1958 and 15 which had been donated in 1959, and Stendahl gave his opinion as to the value of each. Stendahl reiterated his opinion that the large size water colors had a fair market value of approximately $300, but stated that in his opinion others shown him, which had been donated in 1959 and which were smaller in size or were in some medium other than water color, had a lesser fair market value, ranging from $125 to $200. We are satisfied from the evidence that the 15 illustrations donated in 1959 which were presented in court are representative of the 10 which were not so presented. Taking into consideration all the evidence, including the opinion testimony and the sales made several *301 years later in 1963 and 1964, to which we have accorded such weight as we think is justified, and exercising our best judgment, we have concluded and have found as a fact that the aggregate fair market value of the illustrations donated in 1958 was $4,000 and that the aggregate fair market value of those donated in 1959 was $2,500. Decision will be entered under Rule 50. Footnotes
1. An architectural illustration (sometimes called an architectural rendering or delineation) is a painting or drawing made to depict in perspective a house or other building or some part thereof. It is prepared from floor plans and elevations furnished by the designer to the illustrator. Generally, the purpose of the illustration is to show to the designer's effent what the planned house or building will look like when completed. The illustration is usually drawn on tracing paper or water color paper. The drawing is then filled in with water color paint, ink, pencil, charcoal, or crayon. The illustrations are normally made in two sizes: a large size which is approximately 24 by 32 inches; and a small size which is approximately 14 by 23 inches.↩
2. Section 170 of the Code provides in part as follows: (a) Allowance of deduction. - (1) General rule. - There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * * Section 1.170-1 of the Income Tax Regulations provides in part as follows: (c) Contribution in property. - (1) General rules. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * *.↩