Clark Hartwell, et al. * v. Commissioner. Hartwell v. Commissioner
Docket Nos. 1657-63 - 1659-63.
United States Tax Court
T.C. Memo 1965-49; 1965 Tax Ct. Memo LEXIS 280; 24 T.C.M. (CCH) 278; T.C.M. (RIA) 65049; March 8, 1965
*280 Hield: That amounts paid by the corporation for legal services performed in connection with a court action between its principal stockholder and his wife for separate maintenance, divorce, and division of property, did not constitute deductible ordinary and necessary business expenses of the corporation under Sec. 162 of the I.R.C. of 1954. Held, further: That the amounts so paid by the corporation constituted constructive dividends to such principal stockholder. The amount of charitable contributions to which the individual petitioners are entitled determined. John G. Gemmill, 530 Statler Center, 900 Wilshire *281 Blvd., Los Angeles, Calif., for the petitioners. Thomas J. Sullivan, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax of the petioners in the following amounts: Docket No.
Petitioner
Year
Deficiency
1657-63
Clark Hartwell
1959
$14,451.21
1658-63
Clark and Nina Hartwell
1960
23,008.28
Year Ended
1959-63
Hartwell Corporation
Mar. 31, 1958
1,708.12
Mar. 31, 1959
3,511.60
Mar. 31, 1960
6,548.35
The parties having reached agreement with respect to certain issues, the issues remaining for consideration are: (1) Whether attorneys' fees paid by Hartwell Corporation in 1959, 1960, and 1961 in connection with a suit between its president Clark Hartwell and his then wife for separate maintenance are properly deductible by the corporation as ordinary and necessary business expenses under section 162 of the Internal Revenue Code of 1954 (the deductibility of the amount paid in 1961 is in question because of the effect upon a claimed net operating loss carryback from the taxable year ended March 31, 1961, to the taxable *282 year ended March 31, 1958); (2) Whether the amounts so paid constituted constructive dividends to Clark Hartwell in the years 1959 and 1960; and (3) Whether the respondent properly disallowed as deductions amounts claimed by the individual petitioners for 1959 and 1960 as charitable contributions. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. Petitioner, Clark Hartwell (hereinafter referred to as the petitioner), was married to Winifred Hartwell from 1926 until her death in 1946. In 1947 he married Eleanor M. Hartwell and was married to her until a divorce was granted to him by the State of Alabama on August 26, 1960. On August 27, 1960, he married Nina Hartwell. The petitioner filed joint income tax returns with his wife for the taxable years 1959 and 1960 with the district director of internal revenue at Los Angeles, California. Petitioner, Hartwell Corporation (sometimes hereinafter referred to as the corporation), formerly Hartwell Aviation Supply Company, is a corporation existing under the laws of the State of California, with its principal place of business in Los Angeles. It filed its income tax returns for *283 its taxable years ended March 31, 1958, 1959, 1960, and 1961 with the district director of internal revenue at Los Angeles. On the date of Winifred Hartwell's death in 1946, she and the petitioner owned, as community property, a 50% interest in the Hartwell Aviation Supply Company, a partnership (hereinafter referred to as the partnership). Sheldon P. Hartwell, brother of the petitioner, held the other 50% interest in the partnership. By her will, Winifred Hartwell devised her community property interest in the partnership in trust for the benefit of her and petitioner's son, Robert C. Hartwell, until Robert should reach the age of 25 years, at which time the trust was to distribute its property to him. In 1948 Sheldon P. Hartwell retired from the business, the partnership was dissolved, and Sheldon received cash representing his one-half interest on the distribution of the assets of the partnership. Thereafter, by agreement between the petitioner and the trust, the business continued as a quasipartnership, petitioner holding a 75% interest and the trust holding a 25% interest, until Robert attained the age of 25, at which time the trust distributed to him the 25% partnership interest. *284 At the time of his marriage to his wife Eleanor in 1947, the petitioner was under the impression that everything he owned at that time would automatically become community property. As a result thereof, he had the name of his wife Eleanor placed on certain patent applications as a partner and also had her name put on several Government contracts as a partner. She travelled extensively with him on business trips and he often referred to her as his partner. However, he never had any partnership agreement with her, either written or oral. About 1950 Eleanor Hartwell began to request petitioner to draw up some sort of document recognizing that she had an interest in the business. She told the petitioner that she wanted to take an active part in the business and direct its activities as much as she could. On several occasions she told Catherine Ridley, a long time employee of the business, that all business matters should be referred to her, Eleanor, for approval. Eleanor Hartwell lacked a knowledge of business transactions and particularly lacked the technical knowledge required in the operation of this highly specialized business. For a while the petitioner did not take seriously *285 the requests of his wife Eleanor, but later, in 1954, he did take them seriously when she engaged the services of an attorney who asked the petitioner's attorney for a clarification of the wife's interest in the business. Petitioner's attorney advised petitioner that his wife had no right to any assets which petitioner had acquired prior to his marriage. Thereupon, the petitioner told his attorney to make some arrangement to satisfy his wife by giving her an interest in some of his assets, but not to include any interest in the business. In early 1955 the petitioner and his wife were separated for a while. Negotiations continued until the middle of 1955 in an effort to reach an agreement concerning a division of the petitioner's property. The negotiations were then discontinued upon reconciliation of the petitioner and his wife. Negotiations commenced again in the latter part of 1955. Throughout all of these negotiations the petitioner refused to agree to allow any portion of the partnership business to be transferred to his wife. On January 10, 1956, Eleanor Hartwell filed in the Superior Court for the State of California an action against petitioner for separate maintenance, and *286 for a division of community property. Therein she alleged that the community property included various bank accounts, securities, real estate and business property, including the partnership business and two businesses operated by petitioner as sole proprietorships. On January 27, 1956, petitioner filed a crosscomplaint for a divorce. On February 10, 1956, the Superior Court issued a restraining order specifically enjoining either party from interfering with the person, property, or business activities of the other. On May 10, 1957, the corporation was formed to take over the partnership business, 75% of the stock being issued to petitioner and the remaining 25% to his son Robert. The corporation was originally operated under the same name as the partnership, but sometime in 1961 its name was changed to Hartwell Corporation. The petitioner was its president, his son was vice president, and Catherine Ridley was secretary-treasurer and comptroller, and these three were its directors. Negotiations between petitioner and his wife continued unsuccessfully throughout 1956, 1957, 1958, and 1959 in an effort to resolve the property dispute. On November 16, 1959, the Superior Court, upon *287 the basis of the medical opinion of a court appointed psychiatrist, found that Eleanor Hartwell's mental state required that she be represented by a guardian ad litem, and appointed her attorney as such guardian. On January 28, 1960, such court entered a judgment of separate maintenance, in effect dismissed petitioner's cross-complaint for divorce, and approved a property settlement agreed upon by the respective parties. Under such agreement Eleanor Hartwell obtained certain property as her separate property, but received no interest in the corporation. Throughout the entire period of the controversy between petitioner and his wife Eleanor, petitioner was represented by a law firm which had handled his personal affairs over the period from 1946 to the present time and which had also represented, successively, the partnership and the corporation over the same period of time. Such law firm submitted to the corporation, during its taxable years ended March 31, 1959, 1960, and 1961, bills in the respective amounts of $6,753.07, $12,593.00, and $3,284.86 for the legal services which it had rendered in connection with the court action between the petitioner and his wife and matters incident *288 thereto. The corporation paid these amounts, after authorization by its board of directors. In its income tax returns for the taxable years ended March 31, 1959 and 1960, the corporation claimed as deductions the above respective amounts of $6,753.07 and $12,593.00. The respondent disallowed these claimed deductions on the ground that it had not been established that such legal fees were ordinary and necessary expenses of the corporation. In its return for the taxable year ended March 31, 1961, the corporation showed a net operating loss of $79,714.14, which was made up in part of the deduction of the attorney fees paid in the amount of $3,284.86. Upon the corporation's application, the respondent allowed a tentative carryback adjustment of such net operating loss to the taxable year ended March 31, 1958, resulting in a refund to the corporation for such taxable year ended March 31, 1958. In the notice of deficiency for the taxable year ended March 31, 1958, the respondent revised the amount of the net operating loss carryback from the taxable year ended March 31, 1961, by disallowing, among other things, the claimed deduction on account of the attorney fees. In his income tax *289 returns for the taxable years 1959 and 1960, the petitioner did not include in income any amount on account of the payment by the corporation of the attorney fees. The respondent determined that the aggregate amount of the legal fees constituted constructive dividends to the petitioner in 1959 and 1960. In his income tax return for the taxable year 1959 the petitioner reported adjusted gross income of $90,416.39 and taxable income of $70,102.65. Therein he deducted as charitable contributions a total of $9,625, consisting of the following items: Hickory Museum of Art
$8,000
Other Charities
125
Catholic Church
1,500 In the notice of deficiency for the taxable year 1959 the respondent disallowed the amount claimed, except to the extent of $1,450, on the ground that no greater amount had been established as allowable. The above item of $8,000 represents a painting by Gilbert Stuart entitled "The Right Hon. Sir Thomas Parker", which the petitioner donated to Hickory Museum of Art, Hickory, North Carolina, in December 1959. This painting had been purchased by the petitioner on December 10, 1958, at a public auction at the Parke-Bernet Galleries in New York City, *290 at a cost of $450. When purchased it was in poor condition and petitioner had it restored and reframed at a cost of $1,000. In December 1959, the petitioner had this painting appraised by a New York appraiser who had appraised it at $8,000. Such painting had a fair market value of $2,500 at the time donated by the petitioner. In 1959 the petitioner made other charitable contributions of $125. In 1959 and 1960 the petitioner travelled extensively. He endeavored to attend a Catholic Church each Sunday wherever he might happen to be, and also endeavored to attend church on other days of the week. When he attended church he always made a contribution. In 1959 his wife Eleanor also attended the Catholic Church and made contributions. In 1959 the petitioner and his wife made contributions totalling $1,200 to the Catholic Church. In 1960 the petitioner made contributions to the Catholic Church in the total amount of $1,000. In his income tax return for the taxable year 1960 the petitioner reported adjusted gross income of $140,725.81 and taxable income of $99,520.98. Therein he deducted as charitable contributions a total of $26,302, consisting of the following items: Wake Forest College
$19,000.00
Hickory Museum of Art.
350.00
Our Lady of Riverside Seminary
4,435.00
Salvation Army
550.00
Greek Orthodox Church
300.00
Jewish Relief
20.00
Cerebral Palsy
2.00
Blind
5.00
Unity
40.00
St. Patricks Cathedral
1,500.00
Other Organized Charities
100.00
*291 In the notice of deficiency for the taxable year 1960, the respondent disallowed the amount claimed, except to the extent of the amount of $1,125, on the ground that no greater amount had been established as allowable. The item of $19,000 represents 2 oil paintings donated by the petitioner to Wake Forest College in Winston-Salem, North Carolina, in 1960 - one by Sir M. A. Shee entitled "Countess of Durham" (claimed as a deduction in the amount of $8,500), and one by Michiel J. Van Miereveld entitled "Dame Hollandaise" (claimed as a deduction in the amount of $10,500). Petitioner had purchased these two paintings sometime prior to World War II. He had purchased the painting "Countess of Durham", together with two other paintings of little value, in 1942 or 1943 for a purchase price of between $3,000 and $4,000. Prior to donating this picture the petitioner had it appraised by the same New York appraiser, who appraised it at $8,500. The petitioner also had the picture "Dame Hollandaise" appraised by the same appraiser, prior to the donation, who appraised it at $10,500. The fair market value of the "Countess of Durham" painting at the time of the donation by petitioner was $2,800 *292 and the fair market value of the "Dame Hollandaise" painting at the time of the donation was $2,000. In August 1960 petitioner made the following donations to the Hickory Museum of Art: an original etching of Abraham Lincoln executed by Otto Schneider; 2 framed copies of the New York Herald of April 15, 1965, telling of the assassination of Abraham Lincoln; and a first edition of "The Photographs of Abraham Lincoln". The first two items had been purchased by petitioner in 1942 or 1943 for at least $400. All these items had an aggregate fair market value at the time of donation of $350. During the year 1960 the petitioner donated the following articles to Our Lady of Riverside Seminary, Riverside, California: a set of antique bedroom furniture and fixtures which prior to the donation had been appraised for petitioner by a New York appraiser at $3,000; a religious oil painting which prior to the donation had been appraised by another New York appraiser for the petitioner at $850; a crystal chandelier appraised by the petitioner himself at $500 because that was the amount that he paid to replace it with a chandelier of similar quality; and a set of crystal wall brackets which the *293 petitioner himself valued at $85. These items had an aggregate fair market value at the time of donation of $4,400. In 1960 the petitioner and his wife Nina contributed to the Salvation Army a washing machine (appraised by petitioner himself at $200) which they had purchased for use in their apartment in New York City, but which was not permitted by the apartment building, and about 39 articles of miscellaneous used clothing which had an aggregate fair market value at the time donated of $275. In 1960 the petitioner made donations, as claimed by him in his return, to Greek Orthodox Church, Jewish Relief, Cerebral Palsy, Blind, and Unity. He also made donations of $100, as claimed, to "Other Organized Charities". Opinion The petitioners contend that the respondent erred in disallowing to the corporation as deductions under section 162 of the Internal Revenue Code of 1954, [1] attorney fees which it paid in its fiscal years ended March 31, 1959, 1960, and 1961. These fees were for services performed by a law firm in connection with the court action between the petitioner and his wife Eleanor and matters incident thereto. Such suit was brought by the petitioner's *294 wife for separate maintenance and for a division of community property. The petitioner filed a cross complaint for divorce. Neither the corporation nor the predecessor partnership was a party to the suit. Generally, legal fees paid on behalf of, and for services rendered to, another are not deductible by the payor as ordinary and necessary expenses. J. Gordon Turnbull, Inc., 41 T.C. 358; Royal Cotton Mill Co., 29 T.C. 761; and George D. Mann, 33 B.T.A. 281. The petitioners contend, however, that the petitioner's wife Eleanor sought a proprietary interest in the business (in her suit she sought to have the business declared community property); that had she obtained such an interest she would have attempted to manage the business; *295 that she was not qualified to direct the business; that therefore any intervention by her would disrupt the business; that the legal fees were paid by the corporation to protect its business from interference by her; and that hence such fees constituted ordinary and necessary corporate business expenses. In this connection the petitioner testified that in his opinion if his wife Eleanor were to secure a position of management responsibility in the business, through stock ownership or otherwise, such business would be adversely affected or even destroyed. Similar testimony was given by the petitioner's son, Robert, and by Catherine Ridley, the secretary-treasurer and comptroller of the corporation. The decisive question is whether the services for which payment was made were for the benefit of the corporation or for the benefit of its principal stockholder, the petitioner. Royal Cotton Mill Co., supra. Clearly, the legal services rendered were to and for the benefit of the petitioner individually. As stated, the controversy was an individual and personal one between the petitioner and his wife, being an action for separate maintenance and divorce, and incidentally involving *296 the question whether the wife was entitled to an interest in the Corporation. The corporate business or property were not involved in the suit. The fact that the controversy might possibly result in the recognition of a stock interest of the wife in the corporation, as a result of which the wife might (in the exercise of her right as a stockholder) engage in the management of the corporate business to the detriment of such business, does not, in our opinion, render the expenses of the suit ordinary and necessary expenses of the corporate business. See George D. Mann, supra.Such expenses were those of the petitioner, in his individual and personal capacity, in connection with his marital relationship and the community property. [2] The respondent's disallowance to the corporation of the deductions claimed on account of the legal fees paid is approved.
*297 The respondent also determined that the amount of legal fees paid by the corporation constituted constructive dividends to the petitioner in the taxable years 1959 and 1960. It is well settled that if a corporation pays an obligation of its stockholder or makes a payment for his benefit, the payment may constitute a taxable dividend to the stockholder, even if such payment is not in proportion to stockholdings, or even if some of the stockholders do not participate in its benefits. Irving Sachs, 32 T.C. 815, affd. (C.A. 8) 277 F. 2d 879, certiorari denied 364 U.S. 833; American Properties, Inc., 28 T.C. 1100, affd. (C.A. 9) 262 F. 2d 150; and Louis Greenspon, 23 T.C. 138, affd. on this issue (C.A. 8) 229 F. 2d 947. We hold that the payments of legal fees made by the corporation constituted the payment of constructive dividends to the petitioner, as determined by the respondent. It may be added that there has been no showing by the petitioner that the corporation did not have earnings and profits *298 available for the payment of dividends in the amounts of the legal fees paid. The respondent disallowed the greater part of the aggregate amount claimed on account of charitable contributions in each of the years 1959 and 1960. He now concedes that in 1959 the petitioner made contributions in the amounts as claimed to "Other Charities," and that in 1960 he made contributions in amounts as claimed to the Greek Orthodox Church, Jewish Relief, Cerebral Palsy, Blind, Unity, and "Other Organized Charities." The respondent does not concede that the petitioner is entitled to any amount as contributions to the Catholic Church in 1959 and 1960. We are satisfied from the evidence that in 1959 the petitioner and his wife Eleanor made contributions to the Catholic Church, and that in 1960 the petitioner made contributions to such church, but not in the amounts claimed on the returns. The petitioner testified that he travelled extensively but tried to attend church on Sundays and on other days of the week. He also testified that when he attended church on Sunday his contribution was not less than $20 and that on other days of the week his contribution was not less than $5. He had no record *299 of his contributions to the church and conceded that the amount of $1,500 claimed in the return for each of the years 1959 and 1960 was an estimate. Bearing against the petitioner, who has the burden of proof and whose inexactitude is of his own making, we have exercised our best judgment and have concluded and have found as a fact that in 1959 he and his wife Eleanor contributed $1,200 to the Catholic Church and that in 1960 the petitioner contributed $1,000 to such church. Cohan v. Commissioner, (C.A. 2) 39 F. 2d 540. The parties are in disagreement with respect to the amount of deduction allowable on account of contributions of various items such as furniture, clothing, and objects of art. With respect to the donation of items in kind, we are concerned with the fair market value thereof at the dates contributed. [3] The issue of fair market value of property is, of course, a question of fact to be determined from all the evidence. [4]
*300 In 1960 the petitioner donated to the Hickory Museum of Art several items of "Lincolnia," and in his return for that year claimed a deduction of $350 on account thereof. The respondent contends that no greater deduction than $25 should be allowed on account thereof. The evidence shows that 3 of such items had been purchased by the petitioner in 1942 or 1943 for at least $400. We have concluded and have found as a fact that these items in the aggregate had a fair market value of $350 on the date of the donation, as claimed by the petitioner. In 1960 the petitioner and his wife Nina deducted as a charitable contribution the amount of $4,435, representing a number of items contributed to Our Lady of Riverside Seminary, as set forth in the Findings of Fact. On brief the respondent concedes a deduction of $500 on account thereof, but no more. Evidence was adduced to show that some of such items had been appraised prior to the donation by appraisers, and the appraisals were introduced in evidence without objection. No evidence was submitted to show error in such appraisals, and we have accepted them as representing the fair market value of such items. One item which was donated was replaced *301 by an article of similar quality, which the petitioner purchased, and we have accepted such purchase price as fixing the fair market value of the article donated. The only item which had not been appraised by a professional appraiser was a set of crystal wall brackets which the petitioner had claimed at a value of $85. We have concluded and have found as a fact that the aggregate fair market value of the items donated to the seminary was $4,400 at the time of the donation. In 1960 they also deducted as a charitable contribution the amount of $550, representing a washing machine and about 39 articles of used clothing donated to the Salvation Army. The evidence shows that the clothing had originally cost in excess of $1,000, but there is no proof as to the original cost of the washing machine. The petitioner testified that the machine had a value of approximately $200. He did not testify as to the value of the used clothing. Under the circumstances, we have exercised our best judgment and have found as a fact that at the time of the donation the aggregate fair market value of the washing machine and the clothing was $275. Cohan v. Commissioner, supra. In his return *302 for 1959 the petitioner claimed a deduction of $8,000 on account of the contribution to Hickory Museum of Art of the Gilbert Stuart painting entitled "The Right Hon. Sir Thomas Parker." The respondent maintains that he properly allowed a deduction of $1,450 on account thereof. This painting had been purchased by the petitioner, about one year prior to the date of donation, at an auction held at a large gallery in New York City at a cost of $450. A New York appraiser had appraised the painting for the petitioner in December 1959, just prior to the donation, at $8,000. The petitioner did not present such appraiser as a witness. The petitioner, who had been engaged in the business of buying and selling paintings over the period from 1946 to 1950, testified that in his opinion the painting had a fair market value at the time of donation in excess of $10,000. On the other hand, the respondent presented Milton Holland, as an expert witness, who testified at length with respect to sales of various paintings, including paintings by Gilbert Stuart. He did not actually observe this painting, but had seen a black and white picture of it. However, he testified as to his familiarity with many Gilbert *303 Stuart paintings. He testified that in his opinion such painting had a fair market value in 1959 of from $1,000 to $2,500. We were impressed with Holland's experience and knowledge of value of works of art. Based upon all the evidence of record, we have concluded and have found as a fact that at the time petitioner donated the painting entitled "The Right Hon. Sir Thomas Parker," such painting had a fair market value of $2,500. In his return for 1960 the petitioner claimed a deduction of $8,500 on account of the contribution to Wake Forest College of the painting by Sir M. A. Shee entitled "Countess of Durham." On brief the respondent contends that the donation on account of this painting should be limited to $1,500. The petitioner had purchased this painting, together with 2 other paintings of little value, in 1942 or 1943 for a purchase price of between $3,000 and $4,000. This painting was appraised by the same New York appraiser, prior to the donation, at $8,500. As stated, such appraiser did not testify at the trial of this case. The petitioner testified that in his opinion the fair market value of this painting at the time of donation was $10,000. Holland testified that it was *304 unlikely that this painting could bring very much beyond $1,500. He testified that one of Shee's major masterpieces had been sold in 1961 for $2,900. Upon a consideration of all the evidence presented, we have concluded and have found as a fact that the fair market value of the painting entitled "Countess of Durham" at the time of the donation was $2,800. In his return for 1960 the petitioner claimed a deduction of $10,500 on account of the contribution to Wake Forest College of the painting by Michiel J. Van Miereveld entitled "Dame Hollandaise". The petitioner had acquired this painting sometime before World War II, but the cost has not been shown. Prior to making the donation the petitioner had the same New York appraiser appraise this painting, who valued it at $10,500. The petitioner testified that in his opinion the painting had a fair market value at the time of donation of at least $10,500. Holland testified that Dutch portraits of this type were in great demand in the early part of the century, but are currently out of vogue. He testified that in his opinion this particular painting had a fair market value at the date of donation of about $2,000. There was evidence presented *305 as to several sales at auction of Van Miereveld's portraits over the period from 1947 to 1960, none of which was at a price in excess of $575. Upon the basis of all the evidence, we have concluded and have found as a fact that the fair market value of the painting entitled "Dame Hollandaise" at the time of the donation was $2,000. Decisions will be entered under Rule 50. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Clark and Nina Hartwell, Docket No. 1658-63; and Hartwell Corporation (formerly Hartwell Aviation Supply Company), Docket No. 1659-63.↩
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *.↩
2. It may be added that it would appear that under the holding of United States v. Gilmore, 372 U.S. 39↩, the petitioner would not himself be entitled to deduct these legal fees had he himself paid them, such fees representing "personal" or "family" expenses. A fortiori, such fees paid by the corporation on petitioner's behalf would not constitute ordinary and necessary business expenses of the corporation.
3. Section 170 of the Code provides in part as follows: (a) Allowance of deduction. - (1) General rule. - There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. Section 1.170-1 of the Income Tax Regulations pfovides in part as follows: (c) Contribution in property. - (1) General rules. If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. * * *.↩
4. Tripp v. Commissioner, (C.A. 7) 337 F. 2d 432; Hamm v. Commissioner, (C.A. 8) 325 F. 2d 934; Estate of Grace N. Williams v. Commissioner, (C.A. 9) 256 F. 2d 217; Penn v. Commissioner, (C.A. 9) 219 F. 2d 18; and Hamburger v. Commissioner, (C.A. 9) 166 F. 2d 422↩, all affirming Memorandum Opinions of this Court.