ROBERT C. AND DEBRA L. OSBORNE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Osborne v. Commissioner
Docket No. 3975-92
United States Tax Court
T.C. Memo 1994-360; 1994 Tax Ct. Memo LEXIS 373; 68 T.C.M. (CCH) 273; August 1, 1994, Filed *373 Decision will be entered under Rule 155. For petitioners: John J. Standifer, Jr., [1] and Susan M. Freund. For respondent: Stephen J. McFarlane and J. Robert Cuatto. JACOBS
JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in, additions to, and increased interest on, petitioners' Federal income taxes: Additions to Tax
Sec.
Sec. Sec. Sec. Sec. Year
Deficiency
6653(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6621(c)
6661
1986
$ 34,991
---
$ 1,750
[1]
[2]
$ 8,748
1987
16,860
---
843
[1]
[2]
4,215
1988
12,539
$ 627
---
---
[2]
3,135
All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. After mutual concessions, the issues remaining for decision are: (1) The value of medical educational materials donated *374 by petitioners to the Symposia Foundation, Inc. (the Foundation) in 1986; and (2) whether petitioners are liable for additions to tax for negligence for the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Tucson, Arizona, at the time the petition in this case was filed. They filed a joint Federal income tax return for each year in issue. At all relevant times, petitioner Robert Osborne practiced medicine as an anesthesiologist. Petitioner Debra Osborne was a nonpracticing registered nurse. The Foundation is a tax-exempt organization under section 501(c)(3) which is qualified to receive charitable contributions. One of the Foundation's functions is to provide funding for seminars on health care and health-related topics conducted or produced by medical schools and hospitals. In connection therewith, the Foundation marketed a program in which it sold the medical education materials used in connection with or generated by the seminars. Those persons who desired to become participants in the Foundation's *375 program were required to sign a binding contract to purchase medical educational materials. The contract gave the purchaser the right to disseminate the materials as desired. However, the Foundation encouraged the purchaser to contribute the purchased materials back to the Foundation. The Foundation would then publish the contributed materials in bound book form and distribute many of the books free of charge to hospitals, clinics, libraries, medical schools, and students. The Foundation encouraged participation in its program by valuing acquired materials at the retail price at which the publisher sold the books to the general public, rather than the cost of the materials. The Foundation promoted this program as an "exceptional tax benefit". Before investing in the Foundation's program, petitioners reviewed the promotional information provided by the Foundation. Such information included a tax opinion prepared by the law offices of Cassel & Cassel. Petitioners also consulted Jacob Fruchthendler, a representative of the Foundation who operated a financial services business, and asked his opinion of the arrangement. Fruchthendler allegedly performed a due diligence study for *376 petitioners on the financial merit of investment in the Foundation. He based his study on information provided by the Foundation. On March 30, 1986, petitioners signed a contract agreeing to purchase $ 10,000 worth of medical materials from the Foundation. In early September, a medical association held a conference in Georgia. One of the topics of the conference was the late effects of poliomyelitis. On December 18, 1986, petitioners received a letter from the president of the Foundation informing petitioners that their purchase would be used to publish materials resulting from the polio conference (the polio conference materials). On December 25, 1986, petitioners contributed all their rights, title, and interest in the polio conference materials to the Foundation. During 1987 and 1988, the Foundation published the polio conference materials in a book entitled Research and Clinical Aspects of the Late Effects of Poliomyelitis. (The book was in the pre-publication stage throughout 1986.) The Foundation had 1,400 copies of the book printed. The Foundation sold 40 books at a retail list price of $ 27.95. The remaining books were given (without charge) to medical schools, medical *377 students, and libraries. In March 1987, the Foundation sent petitioners a Form 8283 which indicated that the fair market value of petitioners' contribution was $ 39,130. This amount was determined by multiplying 1,400 copies of the book by its $ 27.95 retail list price. Petitioners claimed a deduction in 1986 in the amount of $ 39,130 for their contribution of the polio conference materials to the Foundation. Respondent determined that the fair market to the Foundation. Respondent determined that the fair market value of such contribution was $ 10,000. OPINION Issue 1. Petitioners Are Not Entitled to a Charitable Contribution Deduction Greater Than $ 10,000
Section 170(a)(1) allows a deduction for a charitable contribution in the year the contribution is made. The contribution is made when delivery is effected. Skripak v. Commissioner, 84 T.C. 285, 320 (1985); sec. 1.170A-1(b), Income Tax Regs. Where a charitable contribution consists of property other than money, such as in the instant case, the value of the contribution is the fair market value of the donated property at the time of contribution. Sec. 1.170A-1(c)(1), Income Tax Regs. *378 In this regard, fair market value is defined as the "price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts." United States v. Cartwright, 411 U.S. 546, 551 (1973); sec. 1.170A-1(c)(2), Income Tax. Regs. Fair market value is determined from all the facts and circumstances. Skripak v. Commissioner, supra at 320; Zmuda v. Commissioner, 79 T.C. 714, 726 (1982), affd. 731 F.2d 1417 (9th Cir. 1984); Estate of DeBie v. Commissioner, 56 T.C. 876, 894 (1971). Respondent does not dispute petitioners' entitlement to a deduction for their contribution of the polio conference materials to the Foundation for the year 1986. Respondent does, however, dispute the amount of the claimed deduction. Petitioners argue that the fair market value of the donated property should be extrapolated from the sale of the 40 books to the general public. Respondent argues that the fair market value of the donated *379 property is the amount petitioners originally paid the Foundation for the polio conference materials. The determination of the Commissioner is presumptively correct. The taxpayers bear the burden of proving the Commissioner wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners argue that at the time they made the contribution to the Foundation on December 25, 1986, the fair market value of the polio conference materials had increased because the polio conference was successful. They analogize their case to Skripak v. Commissioner, supra.In Skripak, the taxpayers purchased books from a printer and donated them, through the printer, to various libraries. The taxpayers paid a subscription price, but deducted the retail price of the books, which was three times that of the subscription. Id. at 311-313. After determining that the books had some value in the retail market, this Court allowed a deduction, but determined that the fair market value of the books was limited to 20 percent of the printer's retail list prices of the books. Id. at 327-329. *380 Petitioners argue that the value of their donation should be based on the retail list price of the book containing the polio conference materials. We disagree. Petitioners contributed materials for a book rather than finished books. Accordingly, the value of their donation is to be based on the value of the polio conference materials (not the value of the books) on the date of contribution. The price paid by the donor in an arm's-length transaction is strong evidence of the property's fair market value. Tripp v. Commissioner, 337 F.2d 432 (7th Cir. 1964), affg. T.C. Memo. 1963-244; Goldstein v. Commissioner, 89 T.C. 535, 544 (1987); Chiu v. Commissioner, 84 T.C. 722 (1985). The closer in time the purchase is to the donation, the stronger the presumption is that the price paid is the fair market value. Goldstein v. Commissioner, supra at 544. Although petitioners' purchase of the materials was not contemporaneous with their donation, petitioners have not shown that the value of the polio conference materials changed during *381 the 9-month interval between the date the materials were purchased and the date the materials were donated to the Foundation. As stated, petitioners mistakenly focus their argument on the value of the finished books rather than on the value of the materials contributed. After petitioners made their gift, the Foundation transformed the polio conference materials into the books, which were then sold or distributed free of charge. Petitioners used the retail list price at which a relatively small number of the books had been sold in order to determine the value of their contribution to the Foundation. Most of the books, however, were donated to institutions and students free of charge. Further, as stated, the value of petitioners' contribution does not encompass the finished product. In the absence of evidence presented by petitioners as to the value of the polio conference materials at the time of contribution, we sustain respondent's determination. Grossman v. Commissioner, T.C. Memo. 1973-219. Accordingly, petitioners' charitable contribution for the polio conference materials donated to the Foundation is $ 10,000. Issue 2. Petitioners *382 Are Liable for the Additions to Tax for Negligence
Section 6653(a) provides that if any part of an underpayment of tax is the result of negligence or intentional disregard of rules or regulations, the taxpayer must pay an addition to tax equal to 5 percent. For 1986 and 1987, the taxpayer must also pay an addition to tax equal to 50 percent of the interest due on the portion of the underpayment due to negligence. Negligence is the failure to exercise the due care a reasonable, prudent person would in a similar situation. Betson v. Commissioner, 802 F.2d 365, 372 (9th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-264; Neely v. Commissioner, 85 T.C. 934, 947 (1985); Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984). Petitioners correctly point out that reasonable reliance on the advice of experts can be sufficient to avoid the negligence penalty. Ewing v. Commissioner, 91 T.C. 396, 423 (1988); Industrial Valley Bank & Trust Co. v. Commissioner, 66 T.C. 272, 283 (1976). However, *383 reliance on professional advice, by itself, is not an absolute defense to negligence. Petitioners must first demonstrate that their reliance was reasonable. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Petitioners have failed to do so. We believe the instant case to be analogous to Zmuda v. Commissioner, supra, and Horn v. Commissioner, 90 T.C. 908 (1988). In Zmuda, the taxpayers transferred property to trusts. Their accountant warned them that the transfer could have possible tax counsequences. The taxpayers continued their activities without seeking the advice of independent counsel. Id. at 1422. The Court of Appeals found that because of recent press coverage about questionable tax shelters, the taxpayers' failure to seek independent advice was not reasonable. Id.
In Horn, the taxpayers were sophisticated individuals who invested in a gold mine program. They did not seek an outside appraisal, instead relying on the advice of representatives who were not experts *384 and who were being compensated by the promoter. This Court held that a reasonable person would not rely on the representatives' information to make a business decision. Id. at 942. In the instant case, petitioners are sophisticated investors who have sought independent advice for other investments. However, with regard to their investment in the contributed polio conference materials, which involved a $ 10,000 cash outlay for a claimed $ 39,000 tax deduction, petitioners did not seek independent advice. Although petitioners hired an accounting firm to prepare their tax returns, they did not solicit its advice on this matter. Rather, petitioners relied on advice given by the Foundation and one of its representatives, Fruchthendler. Fruchthendler ran a financial services business; he was not an accountant. Fruchthendler's connection with the Foundation prevents him from being an independent expert upon whose advice petitioners could reasonably rely. Petitioners contend that they relied on a tax opinion provided by the Foundation. The tax opinion had been commissioned by the Foundation. The opinion stated that the fair market value of the donated materials was determined *385 by the price charged by the publisher. However, the opinion warned that the IRS might disagree with the Foundation's determination of fair market value and urged the investor to seek advice independently. Petitioners did not heed the advice of the opinion. Based upon the value of the deduction promised relative to petitioners' cash outlay, and considering the incentive for the Foundation to inflate the value of the materials, we do not find petitioners' reliance on the information provided by the Foundation to be reasonable. Because petitioners' reliance was not reasonable, we sustain the additions to tax for negligence as determined by respondent. To reflect concessions by both parties, and the foregoing, Decision will be entered under Rule 155. Footnotes
1. John J. Standifer, Jr. withdrew as counsel of record for petitioners by motion granted on Feb. 16, 1994.↩
1. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
2. 120 percent of the interest due on the deficiency.↩